CARAWAY, J.
hOn May 19, 2010, a six-person Tensas Parish jury convicted Bobby Higginbotham of malfeasance in office and felony theft for his actions as mayor of the Town of Waterproof. La. R.S. 14:134 and 14:67. During a lengthy recess of the trial and after the full presentation of the state’s case on three charges contained in the indictment, a partial mistrial was granted on the charge of public contract fraud, a violation of La. R.S. 14:140. Higginbotham received concurrent sentences of five years at hard labor, two years suspended for the malfeasance conviction and seven years at hard labor, three years suspended for felony theft. Higginbotham appeals his convictions and sentences including a claim that the granting of the partial mistrial on the public contract fraud charge was in error. For the following reasons, we reverse the convictions.

Facts and Procedural History

In January of 2007, Bobby Higginbotham took office as Mayor of the Town of Waterproof (the “Town”), Louisiana, a Lawrason Act municipality, located in Tensas Parish. In February of 2009, a Tensas Parish grand jury issued a 44-count indictment charging Higginbotham with 21 counts of felony theft, 18 counts of malfeasance in office, 4 counts of public salary deduction and one count of unauthorized use of a movable.
Immediately before opening statements in the trial of this case, the state amended the grand jury indictment to reduce the charged offenses to only three counts, including, for the first time, a public contract fraud charge |2under La. R.S. 14:140. Those counts and their descriptions contained in the written amended bill of indictment included:
1) Public Contract Fraud due to Higginbotham’s use of his power or position “by instructing Town of Waterproof employees to purchase goods and services from a business or partnership for the Town of Waterproof of which [Higginbotham] is a member.”
2) Malfeasance in Office by the intentional and unauthorized use of the Town’s funds for personal travel unrelated to town business.
3) Felony theft “by increasing [Higginbotham’s] salary in an amount in excess of $500.00 without the approval and/or knowledge of the Board of Aider-man.” Higginbotham’s salary authorized by ordinance was $12,000, yet he later was paid a salary of $36,000.
*6 The name of Higginbotham’s purported business out of which the public contract fraud occurred was Higginbotham’s Place, a convenience store which sold gas.- From Higginbotham’s assignments of error now raised, the public contract fraud charge, which was ultimately dismissed during trial by the granting of a partial mistrial, will be central to our ruling in this appeal.
After the removal of Higginbotham’s initial counsel in March 2009, due to a conflict of interest, Higginbotham sought numerous continuances of the case relating to his purported unsuccessful efforts to obtain counsel. In early 2010, assessing Higginbotham’s actions as delay tactics, the court appointed a public defender as standby counsel for Higginbotham, and the case was set for trial on March 29, 2010.
On March 15, 2010, the recently appointed standby counsel filed a motion for discovery and Higginbotham followed with a similar pro se motion on March 17, 2010. Both motions were set for hearing on March 22, 2010. By the date of the hearing, the state had produced the “majority of discovery.” On March 26, 2010, Higginbotham filed a motion to continue |son the grounds that he had not had time to review the evidence provided by the state. Hearing on the motion was set for the first day of trial.[1]
On March 29, 2010, the state filed notice of its intent to use evidence of other crimes, specifically seeking to introduce evidence relating to the Mayor’s payment of bonuses to police officers for their issuance of a high volume of traffic tickets.
Prior to the beginning of trial on March 29, 2010, the court denied Higginbotham’s motion for continuance as not being well grounded and ordered the state to provide Higginbotham with any remaining discovery it had in its possession.[2] As evidence contained in the discovery responses was introduced by the state, Higginbotham continued to object on the grounds that he had not been able to review it.
After the trial had proceeded through two days of testimony for the state’s case,[3] on March 31, 2010, Higginbotham sought writs to this court on the issue of a continuance regarding his lack of time for preparation. This court stayed the trial proceedings on April 1, 2010, and ordered the state to submit a response and the trial court to submit a written per curiam to the court regarding the issues of the proceedings raised by defendant. At |4the trial court, simultaneously with this court’s ruling on April 1, recommencement of the fourth day of trial was actually delayed by the hospitalization of the defendant with chest pains. Because of that development the trial court itself recessed the proceedings until Higginbotham’s writ application and his health issue were resolved.
After reviewing the trial court’s per cu-riam, this court granted Higginbotham’s *7 writ on April 8, 2010, with regard to the motion for continuance, directing the trial court to:
grant a recess of the trial for a minimum of 30 days to allow the defendant an opportunity to fully review the materials provided in response to the motion for discovery and prepare a defense to the indictment(s) charging public contract fraud and felony theft.
In April of 2010, during the recess of the trial, Higginbotham filed a motion for mistrial based upon the defectively transcribed testimony of two state witnesses which he claimed prejudiced his defense. During presentation of the testimony of Ted Higginbotham and Dr. Glenda Richardson, the court’s recording equipment malfunctioned. Thus, none of Ted Higginbotham’s testimony was transcribed and only part of Richardson’s testimony was transcribed. On May 7, 2010, by written judgment, the court denied Higginbotham’s motion for mistrial. Higginbotham sought writs to this court which, on the morning of May 18, 2010, ordered the granting of a partial mistrial on the public contract fraud case. The state’s agreement to the partial mistrial-was noted in this court’s ruling as follows:
After reviewing both the application and the State’s opposition, and in light of the State’s agreement that the trial court should grant a partial mistrial as to Count One, this writ application is hereby ^granted in part to declare a partial mistrial as to Count One of the indictment charging Public Contract Fraud.
Simultaneously, on the afternoon of May 18, 2010, the trial court called a hearing on various motions including the mistrial. At the hearing, the state also advised the trial court of its agreement to a partial mistrial as to the public contract fraud charge only. The defense objected and requested a mistrial on all counts. The trial court granted the motion in part for the charge of public contract fraud, coinciding with this court’s order of that date.
Trial resumed on May 19, 2010, and the state again immediately rested its case. For the first time during the delayed trial, Higginbotham was represented by counsel and the standby counsel arrangement ended. On that date, the state filed a Motion to Withdraw Evidence from the record seeking to withdraw four exhibits which were introduced during the testimony of Ted Higginbotham and seven other state exhibits which were introduced into evidence during the presentation of the state’s case. On May 19, 2010, the court signed an order withdrawing these exhibits as well as Exhibit D-l, which was introduced into evidence during Ted Higginbotham’s testimony. The exhibits which were removed from evidence upon the partial granting of a mistrial included:
1) State’s Exhibit 3, introduced into evidence during the testimony of Lee Har-ville, a lieutenant with the Louisiana State Police and the state’s first witness. Harville described S-3 as “original and/or copies of receipts where it appears that things were charged to Higginbotham’s Place.”
2) State’s Exhibit 7, introduced into evidence during Harville’s testimony. Har-ville described E-7 as “the stuff that was seized by Trooper Todd Cummings, and brought back and receipt it.”
• lfi3) State’s Exhibit 8, introduced into . evidence during Harville’s testimony. Harville described the document as the merchant participation agreement of US 65 South Partnership which was signed by Bobby Higginbotham as its principal officer. Further, Harville testified that the document showed the merchant application which identified Bobby Higginbotham as the principal owner of US 65 Partnership which had gone by *8 the name of Higginbotham’s Place, One Place Higginbotham and US 65 Partnership. Harville testified that “everybody referred to it as the Mayor’s store.”
Notably Higginbotham objected to the introduction of S-8 on the grounds that it had no bearing on Town affairs. The prosecutor then stated that the evidence was relevant to public contract fraud and that the state “must establish that he is an owner in the business which is known as US 65 Partnership, Higginbotham’s Place and a couple of other names.”
4) State’s Exhibit 9 — introduced during the testimony of Harville who described the document as being titled, “US 65 Partnership Property [sic] and Loss, January through December, 2007.”
5) State’s Exhibit 20 — introduced during the testimony of Harville who described the document as another profits and loss statement for US 65 Partnership for the year of January through December, 2005.
6) State’s Exhibit 33 — introduced during the testimony of state’s witness Calvin Moore who identified the exhibit as the 2002-2004 US 65 Partnership tax returns which were signed by Bobby Higginbotham.
7) State’s Exhibit 34 (same as S-9, S-20) — introduced during the testimony of Moore who described them as in globo tax returns for US 65 Partnership for 2005-2006.
8) Defense Exhibit 1 — introduced during Higginbotham’s examination of Dr. Glenda Richardson. Dr. Richardson described the document as the US Partnership Agreement which explained who the partners were. Richardson testified that the names listed on the document included Ted Higginbotham, Gibson Chickfoo and Dr. Glenda Richardson.
On May 19, 2010, the state also filed a Motion for Admonishment to the jury which included suggested language for the court to read to the jury regarding the partial mistrial. Prior to the restart of trial, counsel for |7Higginbotham objected to the proposed admonishment submitted by the state, refused to provide suggested language of his own, and also objected to the order removing evidence from the record relating to the charge of public contract fraud. The court overruled the objections and trial resumed.
In his defense, Higginbotham called his first witness to testify and after the completion of her testimony, the court issued the following admonishment to the jury regarding the partial mistrial:
All right, ladies and gentlemen of the jury, if you would, listen closely, because this is an instruction of the Court that is important. During the recess, it was discovered that due to malfunction or human error, there is an incomplete recording of the trial testimony of Dr. Glenda Richardson and no recording of the trial testimony of Mr. Ted Higginbotham. Because testimony must be recorded, this Court has granted a partial mistrial as to the charge of public contract fraud, only, and admonishes and instructs you to disregard any and all testimony by Dr. Richardson and Mr. Higginbotham. And further admonishes and instructs you to disregard any documents or physical evidence offered by either the State or Defendant during the testimony of Dr. Richardson or Mr. Ted Higginbotham. You are to draw no inferences in favor of or against either party because a partial mistrial was granted. All items of evidence relevant or pertaining to the charge of public contract fraud have been removed from the record and will not be shown to you when you examine the evidence. In other words, you no longer have a *9 charge of public contract fraud before you. You are further instructed that you are not to consider and must disregard such testimony or physical evidence in determining the guilt or innocence of the accused as to the remaining charges of malfeasance in office and theft. Thank you. Next witness. Please be sworn.
Higginbotham completed the presentation of his case but not without incident. Before the final two remaining witnesses, Higginbotham attempted to recall one of the state’s witnesses who had been released from the rule of sequestration and had sat in the courtroom during the testimony of other witnesses. The court denied Higginbotham’s request. Higginbotham called two final witnesses, including himself, before resting. |sThe jury unanimously convicted Higginbotham of the remaining counts. He was sentenced on February 24, 2011.
On August 16, 2010, prior to sentencing, Higginbotham filed a motion for new trial arguing in relevant part that the trial court erred in failing to grant a mistrial after it was learned that two witnesses’ testimony was not recorded or fully recorded. Higginbotham argued that the lack of transcribed evidence prejudiced his right to judicial review and that any and all references to the proof of contract fraud which was presented to the jury constituted inadmissible other crimes evidence which prejudiced the jury verdicts.
At the hearing on the motion for new trial, a court reporter testified that there was no recording of Ted Higginbotham’s testimony and only a partial recording of Dr. Richardson’s testimony. The witness testified that although the recorder appeared to be on, it was in fact turned off. The court rejected Higginbotham’s argument that a full mistrial should have been declared upon the discovery of the missing recordings based in part upon this court’s ruling on the partial mistrial and that the evidence was admissible at the time it was offered and did not qualify as other crimes evidence. Further, the court determined that the admonishment was sufficient to cure the lack of transcribed testimony.
Thereafter, the appeal ensued.

Discussion

In Higginbotham’s appeal, his counsel raises 13 assignments of error and, in a pro se brief, 6 other assignments are made. There is no assignment | gpf error directly challenging the sufficiency of the evidence of the convictions. In three assignments of error raised by counsel, the following assertions are made concerning the events surrounding the partial mistrial and its effects on the proceedings:
(1) The trial court erred in granting a partial mistrial on the public contract fraud charge.
(2) Mr. Higginbotham was denied his constitutional right to appellate review when the trial court failed to ensure a complete transcript of the proceedings.
(3) The trial court improperly admitted inadmissible 404B evidence over objection without proper Prieur notice.
In summary, defendant asserts, (1) that there is no authority for the grant of the partial mistrial under the Code of Criminal Procedure; (2) that the state’s entire case for its charge of public contract fraud was presented to the jury; (3) that the admonishment to the jury to disregard the evidence of the public contract fraud demonstrates that “other crimes” evidence was improperly received by the jury; and (4) that even the measure of the question of harmless error caused by the “other crimes” evidence cannot be reviewed on appeal due to the incomplete transcript.
Regardless of all the other issues raised by defendant surrounding the procedural *10 rulings before, during and after the trial, the technical problem regarding the incomplete transcription of the testimony was a clear error. In view of our law and the jurisprudence dealing with such a problem, the state made concessions to both the trial court and this court during the recess of trial that it should not proceed on the charge of public contract fraud because of the error in the transcription of the evidence.
|inA criminal defendant has a right to a complete transcript of the trial proceedings, particularly where appellate counsel was not counsel at trial. State v. Deruise, 98-0541 (La.4/3/01), 802 So.2d 1224, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001), citing Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964). La. Const, art. 1, § 19 guarantees a defendant a right of appeal “based upon a complete record of all the evidence upon which the judgment is based.” Additionally, La.C.Cr.P. art. 843 provides:
In felony cases ... the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel.
A slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal does not cause reversal of a defendant’s conviction. State v. Draughn, 05-1825 (La.01/17/07), 950 So.2d 583, 625, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007) (upheld conviction where record included testimony of all witnesses); State v. Castleberry, 98-1388 (La.4/13/99), 758 So.2d 749, 773, cert. denied, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999) (lack of recorded bench conference and transcript of voir dire proceedings held not to be substantial or significant omission from record); State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713 (upheld conviction where defendant’s arguments relating to voir dire were noted as bench conferences in the record and challenges for cause and the attorney’s arguments concerning them were transcribed). Material omissions from the | ntranscript of the proceedings at trial bearing on the merits of an appeal will require reversal. State v. Hoffman, 98-3118 (La.4/11/00), 768 So.2d 542. An incomplete record, however, may be adequate for appellate review. State v. Draughn, supra; State v. Castleberry, supra. A defendant will not be entitled to relief on the basis of an incomplete record absent a showing that he was prejudiced by the missing portions of the record. State v. Draughn, supra; State v. Castleberry, supra. The determination of whether the omissions are material must be made on a case by case basis. The critical inquiry is whether the defendant’s right to judicial review can be performed or is the record so inadequate that the defendant’s constitutional right to review is prejudiced. State v. Boatner, 03-0485 (La.12/3/03), 861 So.2d 149 (held defendant had shown no prejudice in omissions in the record during a witnesses’s testimony who had not in fact identified exhibits which were never introduced into evidence and in the defendant’s testimony which was not “perfectly” transcribed but was sufficient for review). See also, State v. Hawkins, 96-0766 (La.1/14/97), 688 So.2d 473 (which upheld defendant’s conviction despite lack of transcripts of opening statements, closing arguments and jury instructions, due to a lack of showing of prejudice by defendant).
In State v. Landry, 97-0499 (La.6/29/99), 751 So.2d 214, the Louisiana Supreme Court reversed the defendant’s *11 conviction and remanded for a new trial when the record before the court referenced loud construction noise and did not include “adequate safeguards for the recording of the trial proceedings, which hindered the recording of the proceedings.” The 112transcript lacked the identity of the jurors who were speaking, jurors’ responses to questions, peremptory strikes and challenges for cause. It also lacked a transcript of the preliminary hearing, the victim impact statement of defendant’s mother, unrecorded bench conferences and included different versions of the defendant’s criminal history, defendant’s father’s victim impact statement and mis-identifícation of various speakers during trial. Defendant’s appellate counsel was not trial counsel. In support of the reversal of defendant’s conviction, the court cited State v. Parker, 361 So.2d 226 (La.1978); State v. Jones, 351 So.2d 1194 (La.1977); State v. Ford, 338 So.2d 107 (La.1976); and State v. Rooney, 187 La. 256, 174 So. 348 (1937), which are all illustrations of the reversal of convictions for errors in transcriptions of the proceedings.
Important to the Landry court was the fact that it was “faced with assignments of error relative to voir dire examination that we cannot resolve on the present record” based upon “numerous” defense counsel remarks which were transcribed as “inaudible responses during critical portions of voir dire which make it impossible to ascertain why certain jurors were excluded.”
With the transcription defect in the record of the Higginbotham proceedings, the foregoing jurisprudence does indicate that defendant’s right to appellate review of a conviction would be adversely affected. However, since the lost transcript affected the testimony of two witnesses who purportedly testified concerning Higginbotham’s business relationship and ownership of Higginbotham’s Place, the state agreed that a partial [ ^mistrial for Count One of the indictment, the public contract fraud charge, was required; This mistrial conclusion finds support in La. C.Cr.P. art. 775 which provides in pertinent part as follows:
A mistrial may be ordered, and in a jury .case the jury dismissed, when:
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.
' Nevertheless, while Article 775 demonstrates that the procedural defect for mistrial was clear, the article and the criminal code itself do not give allowance for a partial mistrial in the course of a trial involving a multiple count indictment. From our review of jurisprudence, we have found very few cases involving the granting of a partial mistrial.
In State v. Diggs, 43,740 (La.App.2d Cir.12/10/08), 1 So.3d 673, writ denied, 09-0141 (La.10/2/09), 18 So.3d 101, a partial mistrial was granted during a bench trial. The case involved a multiple count indictment where two separate rape victims had been accosted by the defendant within a short time period in nearby .locations. When the second victim began her. testimony, defense counsel recognized her as a person with whom counsel had a professional relationship and moved for a mistrial. After a hearing, the trial court granted a partial mistrial regarding the rape charges pertaining to the second victim. Defendant appealed the granting of a partial mistrial because of the lack of authority for such action in the criminal code. This court rejected that argument, finding that under La.C.Cr.P. art. 17, the trial court possesses inherent authority to con *12 duct the proceeding. The court |14then found harmless error based in large part on the fact that a bench trial conviction had occurred.
In State v. Busby, 94-1354 (La.App.3d Cir.4/5/95), 653 So.2d 140, writ denied, 95-1157 (La.9/29/95), 660 So.2d 854, the court of appeal rejected an ineffective assistance claim. The defendant was charged with three counts of molestation of a juvenile involving separate victims. The case went to a jury, and the state put on evidence for all three offenses. At the conclusion of the state’s case, the prosecution dismissed one of the three counts. The jury returned with guilty verdicts on the two remaining counts. The court affirmed the dismissal of one of the three charges, finding harmless error.
In Busby, the defense argument raised the mistrial provision of La.C.Cr.P. art. 770(2) concerning the prosecution’s evidence of another crime. The article provides as follows:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
[[Image here]]
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
[[Image here]]
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
Higginbotham likewise argues that the partial mistrial ruling was made after the state had presented all of its evidence of the crime of public contract fraud. He asserts that the prosecution therefore directly violated |1fithe prohibition of Article 770(2) and that the article specifically states that the trial court’s admonition to the jury to disregard the defense testimony and exhibits of the other crime “shall not be sufficient to prevent a mistrial.”
Evidence of other crimes, wrongs or acts committed by the defendant is generally inadmissible because of the “substantial risk of grave prejudice to the defendant.” State v. Prieur, 277 So.2d 126 (La.1973). This general rule ensures that a defendant who has committed other crimes will not be convicted of a present offense simply because he is perceived as a “bad person,” irrespective of the evidence of his guilt or innocence. The state may introduce evidence of other crimes, wrongs or acts if it establishes an independent and relevant reason such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. La. C.E. art. 404(B)(1). Although a defendant’s crimes, wrongs or prior bad acts may be relevant and otherwise admissible under La. C.E. art. 404(B), the court must still balance the probative value of the evidence against its prejudicial effects before the evidence can be admitted. La. C.E. art. 403. Any inculpatory evidence is “prejudicial” to a defendant, especially when it is “probative” to a high degree. State v. Germain, 433 So.2d 110, 118 (La.1983). As used in the balancing test, “prejudicial” limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. Id. See also, Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997).
*13 The erroneous admission of other crimes evidence due to the state’s failure to give the defense proper notice, or for any other reason, is subject | lfSto the harmless error rule because the erroneous introduction of other crimes evidence is a trial error, i. e., an error which occurs during the case’s presentation to the trier of fact, which may be quantitatively assessed in the context of the other evidence. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 102. An error is harmless if it can be said beyond a reasonable doubt that the guilty verdict rendered in the case was surely unattributable to that error. State v. Robertson, 06-1537 (La.1/16/08), 988 So.2d 166.
In State v. Johnson, supra, the Louisiana Supreme Court examined the erroneous admission of other crimes evidence by the state in a prosecution for attempted second degree murder and aggravated burglary. In Johnson, the defendant took the stand in his own defense. During his cross-examination, the defendant admitted to one 1973 guilty plea to simple burglary. When the defendant denied any other burglary convictions, the state presented a certified copy of court minutes which showed that in addition to the admitted offense, the defendant had pled guilty to four other burglary charges and not guilty to one. The defendant persisted in his admission of only one previous burglary conviction. The state offered the court minutes into evidence, along with certified copies of six bills of information corresponding the above-noted pleas. The defendant did not object to introduction of the minutes, believing that they were admissible under La. C.E. art. 609.1, but objected to the admission of the bills of information. The court sustained the defendant’s objections finding that the bills of information were unduly prejudicial to the defendant. The state [17sought writs to the court of appeal which reversed the trial court’s ruling and allowed introduction of the bills of information into evidence. Trial resumed and the state questioned the defendant about the documents. The defendant maintained that he pled guilty to only one count of burglary. He appealed his ultimate conviction and sentence. The court of -appeal reversed his conviction after reviewing evidence which showed that what the defendant contended was true. The court concluded that the evidence was erroneously admitted as extraneous offenses that per se prejudiced the defendant. The Supreme Court granted writs to determine whether the harmless error analysis applied to the improper admission of other crimes evidence. The court agreed that the admission of the evidence was inadmissible other crimes evidence but concluded that the harmless error test applied to appellate review, rejecting the previous per se prejudice rule,[4] which had been applied to other crimes evidence violations.[5] In so holding, the *14 court stated that its determination was not barred by consideration of the | ^mandatory provisions of La.C.Cr,P. art. 770, because although “couched in mandatory terms, this is a rule for trial procedure.” Using the harmless error analysis, the court upheld the defendant’s conviction.
In State v. Bell, 99-3278 (La.12/8/00), 776 So.2d 418, the Louisiana Supreme Court reversed a defendant’s armed robbery conviction based upon the prosecutor’s introduction of evidence that the defendant had committed another armed robbery two months earlier. The court of appeal affirmed the conviction after determining that although the trial judge erred in admitting the evidence of the earlier robbery to prove identity, the error was harmless in light of the overwhelming evidence of the defendant’s guilt. The Supreme Court ruled that the court of appeal had correctly ruled that the admission of the evidence for purposes of identity was erroneous. Nevertheless, upon harmless error review, the court ruled that:
When a defendant is being tried on a charge of armed robbery and the prosecutor chooses to present inadmissible evidence that the defendant has committed one or more armed robberies, and the trial court erroneously allows this inadmissible evidence, the prosecutor has a very heavy burden to demonstrate in the appellate court that the error was harmless beyond a reasonable doubt. The very purpose of prohibition of the admission of such evidence, as stated in La.Code Evid. art. 404 A, is to prevent the jury’s convicting an accused on the basis of evidence that the accused’s action in the charged crime was in conformity with his or her prior conduct and the evidence of the prior conduct tends to prove only that the accused was a person of bad character.
The court further stated that the prosecutor can overcome the burden only with “physical evidence directly connecting the accused with the charged crime, with independent testimonial evidence, or with strong and corroborated circumstantial evidence.” Because the only evidence in the case directly connecting defendant with the armed robbery was the 119testimony of two co-perpetrators who were also charged with the robbery, the court “simply [cannot] conclude with any confidence that the jury’s guilty verdict was surely unattributable to the erroneous admission of evidence of a prior armed robbery.”
Article 770 of the criminal code contemplates a direct or indirect reference by the prosecution to another crime allegedly committed by defendant “as to which evidence is not admissible.” The state obviously believed in this unique setting that it had proven beyond a reasonable doubt the crime of public contract fraud. The proof of the crime not only involved the evidence of the two witnesses whose testimony was not transcribed, but numerous other witnesses and the exhibits indicating Higginbotham’s directing to his personal business the Town’s purchases of fuel and other products. This case for public contract fraud was more than a mere passing reference, directly or indirectly, to another crime. Additionally, the trial court’s ad *15 monition and the evidence and documents which were identified to the jury as withdrawn from their consideration served to reiterate the strong proof by the state of the crime of public contract fraud.
Higginbotham’s alleged crime of public contract fraud was different in the manner of its commission from the other charged offenses so that the “other crime” was arguably irrelevant or of minimal independent relevance under Article 404(B) to demonstrate a similar plan or motive. Higginbotham’s defenses for the malfeasance charge and the felony theft charge pertained to the accounting for the use of the Town funds and the payment of his salary, which he claimed were authorized by the Board of 12i>Aldermen. His actions with the Town’s credit card and the checks for his salary were subject to the public audit. On the other hand, the public contract fraud concerned his clear graft which was attempted to be hidden from the public accounting. A summary of the evidence pertaining to the three charges, including the public contract fraud charges, reveals the following.
The state presented testimony of one state police employee who investigated complaints about Higginbotham’s management of the Town and executed search warrants for the Town police department, the Town Hall and Higginbotham’s Place. Through his testimony and the documentary evidence presented therein, thé state sought to establish that Waterproof employees charged Town expenses to Higginbotham’s Place, a business owned by Higginbotham. Additionally, Dr. Glenda Richardson, a partner in the Higginbotham’s Place store, testified that Higginbotham had an ownership interest in Higginbotham’s Place and that he owned “that store.”- A legislative auditor also testified that Ted Higginbotham, the Mayor’s brother and partner in Higginbotham’s Place, told him that Bobby Higginbotham was the actual owner of the partnership that ran Higginbotham’s Place.[6] Testimony by two employees of the Louisiana Legislative Auditor’s Office and the documentation submitted during their testimony was also utilized to establish that Waterproof employees made $43,000 worth of ■ charges at Higginbotham’s Place which was paid with 12i Town funds from January 2007 until July 2008. Several former and current Town employees and Aldermen testified about their knowledge that Town employees regularly bought gasoline from Higginbotham’s Place. A former mayor testified that during her tenure, Higginbotham asked the Town to buy gas from “his” gas station, Higginbotham’s Place, and identified minutes from a May 8, 2006 Board meeting where Higginbotham made this request.
Regarding the malfeasance charge, the auditors’ testimony and related documentary evidence were presented to establish that Higginbotham charged $6,768.67 to the Town credit card for personal expenses and travel from February 2007-March 2009 without documentation of the purported business purpose for the charges. Four aldermen who served during Higginbotham’s term as mayor testified that the Board of Aldermen never approved of the mayor’s trips or received any information from them. One aider-man testified that when Higginbotham became mayor, he asked the Board at the first meeting to apply for a credit card in *16 the name of the Town. Initially, three signatures were required on any Town checks, but three aldermen testified that Higginbotham had “everyone else’s name” taken off of the signature card for the Town’s bank accounts, and ultimately the defendant’s signature was the only one required. Two of the aldermen testified that the Board repeatedly asked for financial information from Higginbotham to no avail. Each stated that Higginbotham never provided financial information including credit card statements to the Board to review. One Town employee testified that while Higginbotham was mayor, he asked the employee to purchase a shredding machine with the Town ^credit card. Another employee testified that Higginbotham invited her and her daughter to stay at his condo in Hawaii.
Regarding the theft claim, the state also utilized expert testimony to establish the proper procedure for setting or increasing the mayor’s salary through the passing of an ordinance. A former Waterproof may- or testified that she was unaware of this requirement. Otherwise, the state presented the testimony of four aldermen who served during Higginbotham’s term to establish that the increase in Higginbotham’s salary was never authorized by ordinance. Through cross-examination, Higginbotham attempted to show that the Board was aware of his salary increase and had approved it in the budget. Alderman Lionel Travers admitted he learned that Higginbotham had been paying himself $36,000 per year from July of 2007-July of 2008. Travers recalled that Higginbotham attempted to convince the Board that it had approved the salary increase and repeatedly tried to persuade the Board to pass an ordinance. Travers identified two proposed ordinances through which Higginbotham unsuccessfully attempted to increase his salary to $60,000 and $70,000. Ultimately, Travers admitted that he had been informed that Higginbotham was receiving a $36,000 salary and that the Board had approved a budget with the salary in it, but he insisted that the Board never passed an ordinance to authorize the increase.
Edna Jean Cooper testified that in 2008 Higginbotham requested the Board to increase his salary from $36,000 to $60,000, although, she stated, the Board never approved the $36,000 salary in the first place. On cross-examination, Cooper admitted that she was not present when the 2007/2008 |2p,budget was approved, which included Higginbotham’s $36,000 salary. Alderman Elizabeth Cooper confirmed that the Board never approved by ordinance Higginbotham’s $36,000 salary. Cooper was confused on whether the Board had approved the $36,000 salary in the 2007/2008 budget. Alderman Caldwell Flood testified that at a February 2008 Board meeting, Higginbotham requested an increase in his salary to $60,000 by ordinance. At that time Flood was unaware that Higginbotham was earning $36,000; Flood testified that the Board never approved the $36,000 salary.
Two of the witnesses called by the defense testified to the conduct of the Waterproof financial administration. A former mayor explained Waterproofs payroll procedure and salary approval. The Waterproof Chief Administrative Officer, Annie Watson, testified that she was at a 2007 Board of Aldermen meeting when the Board voted on a budget which approved the mayor’s $36,000 salary.
Higginbotham chose to testify and categorically denied that he had stolen from the Town of Waterproof or that he had made up his own salary. He claimed that his mistakes were not criminal, and that he did not intentionally try to circumvent the law or do anything for personal gain. *17 Higginbotham persisted in his position that the salary increase occurred in the 2007/2008 fiscal year budget and that the Board approved the salaries in May or June of 2007. He claimed that his salary was not approved by ordinance due to his ignorance of that requirement. Higginbotham also claimed that he personally guaranteed a credit card for the Town because the Town’s credit was too poor for the bank to issue a card. Higginbotham _[^testified that the credit card statements would come to the Town Clerk who had instructions to provide the Board access to those statements. Higginbotham admitted that he used the credit card when he traveled on behalf of the Town but claimed that in his travels, he was engaged in various efforts on behalf of the Town; Higginbotham admitted that when he used the card for “personal purposes,” he reimbursed the credit card company or the Town. Higginbotham also testified that he had the authority to remove all signatures from the check signature cards.
During cross-examination of Higginbotham by the state, the assistant district attorney sought explanation for the approximately $70,000 charged to the Town’s credit card. Defense counsel questioned the breadth of the questioning as possibly relating to the charge of public contract fraud and requested the court to further admonish the jury. The court declined to issue any further admonishment. The state auditor had earlier explained that this sum represented the total amount of Town funds used to pay the credit card balances. As noted above, the auditor attributed $43,000 of the credit card charges to purchases from Higginbotham’s Place and $6,768.67 to personal travel expenses.
From this review, we find that the state’s entire case for public contract fraud could not be sufficiently withdrawn from the jury’s consideration by the admonition given by the trial court. The evidence of the crime involving Higginbotham’s surreptitious conduct for the municipal purchases from his personal business was highly prejudicial to his asserted defense for the two crimes for which he was convicted. Additionally, a total l^measure for a harmless error analysis cannot be given because of the same reason which caused the partial mistrial, the incomplete transcript. Moreover, a partial mistrial is not recognized in the criminal code apparently for the same policy expressed in Article 770(2), which in mandatory terms requires a complete mistrial. The Louisiana Supreme Court has never sanctioned a partial mistrial in its prior rulings, and therefore, we conclude that the mandate from the legislature under Article 770(2) must be followed in this unique setting and that the convictions must be reversed.

Conclusion

For the foregoing reasons, Higginbotham’s convictions are reversed and his sentences vacated. The case is remanded for further proceedings.
REVERSED AND REMANDED.
BROWN, Chief Judge, dissents with written reasons.

. Notably, standby counsel informed the court in a sidebar conference at the March 29 hearing of his intent to seek a continuance should he be formally appointed as counsel. Nevertheless, after a hearing to determine Higginbotham’s financial status, the court refused to appoint an indigent defender to represent Higginbotham and continued the use of standby counsel.

. The record shows that from the time of Higginbotham’s discovery motion and the time of trial, the state had produced 10 boxes of documentary evidence. At the time of this argument, the state was prepared to produce copies of requested recordings of the Board of Aldermen meetings. The court’s order for the state’s production of remaining discovery pertained to this remaining evidence.

.The state’s presentation of its case, which included the testimony of 14 witnesses, concluded on March 31, 2010, at the time the state indicated it "would rest” because it had "admitted all the documents ... we need to.”

. In State v. Collins, 283 So.2d 744 (La.1973), the Louisiana Supreme Court reversed a defendant’s simple burglary conviction based upon the state’s cross-examination of the defendant which included the district attorney’s reference to defendant’s arrest and charge in connection with another burglary. Defense counsel’s objection to the testimony was overruled by the court. Thereafter defense counsel moved for a mandatory mistrial under Article 770(2) which was denied. The Supreme Court determined that the prosecutor's reference to the defendant’s arrest and charge was not admissible in evidence and constituted a mandatory ground for mistrial.

. The court cited and overruled State v. Brown, 428 So.2d 438 (La.1983), which generally stated this rule, but determined that the defendant was not entitled to a mistrial under La. C. Cr. P. Art. 770(2). The Brown court cited State v. Green, 315 So.2d 763 (La.1975), which reversed a defendant's conviction after a prosecutor inappropriately referred to other crimes evidence and the defense sought a mandatory mistrial under Article 770. The *14 court also mentioned State v. Duke, 362 So.2d 559 (La.1978), and State v. Hamilton, 356 So.2d 1360 (La.1978) which involved'prejudice to the defendant’s rights and application of the per se rule caused by other types of statements by the prosecutor. The court cited cases which had previously conducted the harmless error analysis in cases of improper introduction of other crimes evidence including State v. Connor, 403 So.2d 678 (La.1981), State v. Neslo, 433 So.2d 73 (La.1983), and State v. Tassin, 536 So.2d 402 (La.1988), cert. denied, 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 159 (1989).

. Unfortunately, as noted above, the testimony of Ted Higginbotham was not transcribed, but the trial court allowed the auditor to testify to this fact because the auditor's report containing the same statement was admitted into evidence. Only the cross-examination of Dr. Glenda Richardson was transcribed.