# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 19-460

**STATE OF LOUISIANA**

**VERSUS**

**SHERMAN R. HOLLOWAY**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 91523
HONORABLE SCOTT WESTERCHIL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**ULYSSES GENE THIBODEAUX
CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and D. Kent Savoie, Judges.

**AFFIRMED IN PART AND
REVERSED IN PART.**

**Asa Allen Skinner**
**District Attorney, 30th Judicial District**
**Terry Wayne Lambright**
**First Assistant District Attorney**
**P. O. Box 1188**
**Leesville, LA 71446**
**Telephone:  (337) 239-2008**
**COUNSEL FOR:**
    **Plaintiff/Appellee - State of Louisiana**

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**Telephone:  (337) 491-0570**
**COUNSEL FOR:**
    **Defendant/Appellant – Sherman R. Holloway**

**THIBODEAUX, Chief Judge.**

This case arises from a mistrial ordered *sua sponte* by the trial court because of a legal defect in the proceedings which would have made the verdict reversible as a matter of law.

Defendant, Sherman Holloway, was charged by bill of information with first degree rape, a violation of La.R.S. 14:42(A)(3); aggravated kidnapping, a violation of La.R.S. 14:44; armed robbery, a violation of La.R.S. 14:64; home invasion, a violation of La.R.S. 14:62.8; and aggravated battery, a violation of La.R.S. 14:34. After the jury was sworn and testimony had begun, the trial court noticed that Holloway had been charged with two offenses punishable by life imprisonment by bill of information rather than a true bill of indictment. Upon this finding, the trial court declared a mistrial as to all charges.

Holloway was subsequently charged by grand jury indictment with the aforementioned charges. Holloway filed a Motion to Quash Indictment on the Basis of Double Jeopardy. After a hearing, the trial court denied Holloway's motion and the case proceeded to trial on all charges. Holloway was found guilty of all charges. Holloway was sentenced to concurrent sentences of life at hard labor without benefits for first degree rape and aggravated kidnapping; fifty years at hard labor without benefits for armed robbery; twenty years at hard labor for home invasion; and, ten years at hard labor for aggravated battery.

On appeal, Holloway asserts that the trial court erred in declaring a mistrial as to the charges of armed robbery, home invasion, and aggravated battery as there was no legal defect in charging the crimes by bill of information. Thus, Holloway contends that his Motion to Quash as to these charges should have been

granted, as the protection against double jeopardy prohibited him from being retried on those charges. For the following reasons, we find that the trial court erred in failing to grant Holloway's Motion to Quash.

## I.

## ISSUES

We must decide:

(1) whether the trial court erred in declaring a mistrial as to the charges of armed robbery, home invasion, and aggravated battery;

(2) whether the retrial of the charges of armed robbery, home invasion, and aggravated battery violate the prohibition against double jeopardy; and,

(3) whether the trial court erred in denying Holloway's Motion to Quash.

## II.

## FACTS AND PROCEDURAL HISTORY

At trial, the victim, T.D.[1], testified that she was getting ready for work on the morning of July 10, 2016, when Holloway knocked on her door and asked if she needed her grass cut. T.D. stated that she could not afford to pay him, and Holloway left. A little while later, Holloway again knocked on T.D.'s door and offered to cut her grass for free. Holloway went to T.D.'s backyard, where she proceeded to show him the lawnmower. T.D. then returned inside to finish getting ready for work. A few minutes later, T.D. saw Holloway in her bedroom holding a knife. Holloway pinned T.D. between the wall and the bed and told her to "drop her

---

[1]In accordance with La.R.S. 46:1844(W), initials are used to preserve the confidentiality of crime victims who are minors and victims of sex offenses.

drawers and lay down on the bed." When T.D. told Holloway "no," Holloway started looking around the room "like he was looking for something to restrain" her. T.D. was afraid of what would happen, so she did as Holloway said.

Holloway forced himself into T.D. by penetrating her vagina while he had a knife in his hand. Holloway put the knife to T.D.'s throat and threatened to kill her if she did not stop crying. Holloway then forced T.D. to perform oral sex on him, followed by attempted anal sex. After Holloway ejaculated, he took T.D.'s cell phone, wallet, and pocketknife. Holloway gave T.D. her wallet and told her to take him to the ATM, where he wanted T.D. to withdraw $20.00 from her account. T.D. stated that Holloway made her go out of the house in front of him and that she complied out of fear for her life. When Holloway went to move his bike, T.D. ran to her vehicle and drove away. T.D. then went to a friend's house who was waiting on her to go to work. T.D. and her friend drove to the police station, and from there she went to the hospital where a rape kit was performed. T.D. identified Holloway from a six-person lineup. DNA found near her pubic area was consistent with YS & R profile of Holloway.

Police officers located Holloway by using technology from AT&T to "ping" T.D.'s cell phone to an apartment. Holloway was arrested after stating his name and being read his Miranda Rights. The officers brought Holloway to the Leesville Police Department where he admitted that he used a knife to threaten T.D. into having nonconsensual sex and took her cell phone and pocketknife.

III.

## STANDARD OF REVIEW

The decision by the trial court to grant or deny a motion to quash is solely a question of law. *State v. Byrd*, 96-2302, (La. 3/13/98), 708 So.2d 401. Thus, an appellate court reviews the trial court's ruling under de novo standard. *State v. Ancalade*, 14-739, (La.App. 4 Cir. 1/14/15), 158 So.3d 891, *writ denied sub nom. State ex rel. Ancalade v. State*, 15-375 (La. 1/8/16), 184 So.3d 691, *cert. denied sub. nom. Ancalade v. Louisiana* ___U.S. ___ 136 S.Ct. 2467 (2016). Under this standard of review, the appellate court does not defer to any factual findings by the trial court. *Id*.

IV.

## LAW AND DISCUSSION

Louisiana Code of Criminal Procedure Article 591 provides:

> No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of article 775 or ordered with the express consent of the defendant.

Louisiana Code of Criminal Procedure Article 775 Provides:

> A mistrial may be ordered, and in a jury case the jury dismissed, when:
>
> (1) The defendant consents thereto;
>
> (2) The jury is unable to agree upon a verdict;
>
> (3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
>
> (4) The court finds that the defendant does not have the mental capacity to proceed;

(5) It is physically impossible to proceed with the trial in conformity with the law; or

(6) False statements of a juror on voir dire prevent a fair trial.

Upon motion of the defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside of the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.

A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.

Since both first degree rape and aggravated kidnapping are punishable by life imprisonment, they must be charged by grand jury indictment. Louisiana Constitution Article 1, § 15 and La.Code Crim.P. art. 382. Holloway was originally charged with these offenses by bill of information. Consequently, a legal defect in the proceeding which would have made any judgment reversible as a matter of law existed. *State v. Ruple*, (La.App. 2 Cir. 1983), 437 So.2d 873. Thus, a mistrial as to those charges was legally ordered pursuant to La.Code Crim.P. art. 775(3), a retrial of those offenses was not barred by double jeopardy. La.Code Crim.P. art. 591.

It is not clear, however, whether the mistrial was legally ordered as to the offenses of armed robbery, aggravated battery, and home invasion, since those offenses were properly charged by bill of information. Holloway's appellate counsel alleges that since there was no "legal defect" as to these charges, Holloway had the constitutional right to have his trial completed by the jury before which he had been placed in jeopardy. The State argues that a "partial mistrial" is not sanctioned by either the Louisiana Code of Criminal Procedure or the Louisiana Supreme Court.

5

However, in *State v. Diggs*, 43,740, pp. 7-9 (La.App. 2 Cir. 12/10/08), 1 So.3d 673, 678-79, *writ denied*, 09-141 (La. 10/2/09), 18 So.3d 101 (footnote omitted), the second circuit stated the following regarding "partial mistrials":

> Neither the state nor the defense has set forth any legal authority allowing (or disallowing) the granting of the partial mistrial-that is, the granting of a mistrial on some by not all of the counts charged in the indictment. The state cites cases in which the trial court has granted a mistrial on some but not all of the counts in instances when the jury has been unable to agree on a verdict under La. C. Cr. P. art. 775(2). See *State v. McCain*, 583 So.2d 160 (La.App. 3d Cir. 1991), *writ denied*, 588 So.2d 1115 (La. 1991).

> In *State v. Mitchell*, 319 So.2d 357, 358-359 (La. 1975), the court discussed the trial court's power to grant partial relief when there were several grounds in the motion to quash. It reasoned:

> Article 3 of the Louisiana Code of Criminal Procedure provides:

>> "Where no procedure is specifically prescribed by this Code or by statute the court may proceed in a manner consistent with the spirit of the provisions of this Code and other applicable statutory and constitutional provisions."

> As to the court's authority, Article 17 provides in part:

>> "A court possesses inherently all powers necessary for the exercise of its jurisdiction and the enforcement of its law orders, including authority to issue such writs and orders as may be necessary or proper in aid of its jurisdiction. . . . "

> In *State v. Edwards*, 287 So.2d 518 (La. 1973), in interpreting the Code of Criminal Procedure in an instance where it was silent, this Court stated:

>> "The provisions of our Code of Criminal Procedure are intended 'to provide for the just determination of criminal proceedings.' They are to be construed 'to secure simplicity in procedure, fairness in administration, and the

elimination of unjustifiable delay.'" La.Code Crim. Proc. art. 2.

***

"Where the law is silent in such cases, the inherent authority of the court would permit a rule of reason requiring the proceedings to be conducted with dignity and in an orderly and expeditious manner. La.Code Crim.Proc. art. 17."

### *Harmless Error*

Harmless error analysis begins with the premise that the evidence is otherwise sufficient to sustain the conviction if viewed from the perspective of a rational factfinder and asks whether beyond a reasonable doubt the error could not have contributed to the verdict actually returned. See *State v. Haddad*, 1999-1272 (La.2/29/00), 767 So.2d 682, U.S. *cert. denied*. The inquiry, in other words, is not whether, in a trial that occurred without error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely attributable to the error. *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

As argued by the state, it was permissible, but not required for all four offenses to be joined in the same indictment under La. C. Cr. P. art. 493. Furthermore, La. C. Cr. P. art. 495.1 allows for the severance of joined offenses and separate trials when it appears that a defendant is prejudiced by joinder. Clearly, there was little chance or prejudice here because the defendant was tried before a judge only. It would stand to reason that since all four counts were not required to be joined in the same indictment, the trial court had the power to grant partial relief in a case such as the one *sub judice*, where the Louisiana Code of Criminal Procedure is silent on the procedure to be followed. Furthermore, any error would have been harmless because the guilty verdict actually rendered in this trial was surely unattributable to the error. *Sullivan v. Louisiana, supra*. The evidence of the defendant's guilt presented at trial was clearly sufficient. No trial occurred in the denial of a full mistrial.

The second circuit again addressed the validity of a "partial mistrial" in

*State v. Higginbotham*, 46,975 (La.App. 2 Cir. 4/25/12), 122 So.3d 1, *rehearing*

7

*granted* (June 22, 2012), *writ denied*, 12-1718 (La. 5/24/13), 116 So.3d 658. Because of an error in recording the testimony of two State witnesses, the defendant requested a mistrial as to all of the offenses for which he was on trial—malfeasance in office, felony theft, and public contract fraud. *Higginbotham*, 122 So.3d at 7. The trial court, however, granted a partial mistrial as to the public contract fraud charge only. On appeal, the defendant argued that because the partial mistrial ruling was made after the State had presented all of its evidence as to public contract fraud, the State directly violated La.Code Crim.P. art. 770(2) which provides:

> Upon motion of defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument refers directly or indirectly to:
>
> . . . .
>
> (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
>
> . . . .
>
> An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.

*Id.* at 12.

In *Higginbotham*, the second circuit originally agreed with the defendant, finding that a partial mistrial was not recognizable by either Louisiana's criminal code or the Louisiana Supreme Court:

> From this review, we find that the state's entire case for public contract fraud could not be sufficiently withdrawn from the jury's consideration by the

admonition given by the trial court. The evidence of the crime involving Higginbotham's surreptitious conduct for the municipal purchases from his person business was highly prejudicial to his asserted defense for the two crimes for which he as convicted. Additionally, a total measure for a harmless error analysis cannot be given because of the same reason which caused the partial mistrial, the incomplete transcript. Moreover, a partial mistrial is not recognized in the criminal code apparently for the same policy expressed in Article 770(2), which in mandatory terms requires a complete mistrial. The Louisiana Supreme court has never sanctioned a partial mistrial in its prior rulings, and therefore, we conclude that the mandate from the legislature under Article 770(2) must be followed in this unique setting and that the convictions must be reversed.

*Id*. at 17.

The second circuit granted rehearing, however, to revisit the court's finding that a partial mistrial was clear error. The court cited its prior opinion in *Diggs*, where the court held that the trial court had the power to grant a partial mistrial even though the law was silent as to that issue. The court in *Higginbotham* further found that because of the overwhelming evidence of guilt as to the counts for which the defendant was convicted, the jury's verdicts were surely attributable to any error in granting a partial mistrial.

As in *Diggs*, it was permissible, but not required, for all five of Holloway's offenses to be joined in the same indictment under La.Code Crim.P. art. 493. Thus, the trial court should have declared a partial mistrial as to the offenses that were improperly charged by bill of information (first degree rape and aggravated kidnapping) and allowed trial to proceed as to the charges properly charged by bill of information (armed robbery, aggravated battery, and home invasion). Consequently, the mistrial declared as to the offenses of armed robbery, aggravated battery, and home invasion were not "a mistrial legally ordered under the provisions

of Article 775." La.Code Crim.P. art. 591. Therefore, Holloway's second trial violated his protection against double jeopardy as to armed robbery, aggravated battery, and home invasion, unless the mistrial was ordered with Holloway's express consent. La.Code Crim.P. art 591. According to La.Code Crim.P. art. 775(1), a mistrial is lawful if made with a defendant's consent. We must now discuss whether Holloway consented to the declaration of the mistrial as to all charges in the first trial.

At trial, the court stated that the mistrial ruling had been discussed with counsel in chambers. When the trial judge stated that a mistrial must be ordered because of the State's failure to properly charge first degree rape and aggravated kidnapping, he then asked both the State and defense counsel if they agreed that mistrial was the proper procedure. The State responded that it acknowledged the decision of the court, and defense counsel responded, "Understood, Judge." No objection was made to the mistrial until defense counsel filed the motion to quash.

In *State v. Lawson*, 338 So.2d 627 (La.1976), the supreme court found that the defendant's failure to object to the mistrial as improper constituted an acquiescence to the mistrial which, therefore, waived any complaint that the court-ordered mistrial violated his double jeopardy rights.

Subsequently, the supreme court distinguished *Lawson* in *State v. Simpson*, 371 So.2d 733 (La.1979). In *Simpson*, the trial court declared a mistrial *sua sponte* after a State witness testified. The trial court explained that the jury may have been left with the impression that the witness was lying about his prior convictions. According to the supreme court, the record indicated no response to the mistrial was made by either the defendant or his attorney. The court in *Simpson* discussed the issue as follows:

In the instant case, the defense contends that the defendant did not consent to the mistrial, apparently on the basis of the absence in the record of any specific agreement to that effect. The State in turn argues that the defendant did consent to the ruling or, in the alternative, that the trial judge was authorized to grant the mistrial *sua sponte* because "a legal defect in the proceeding (the allegedly improper questions asked by the defense attorney). . . would make any judgment entered upon the verdict reversible as a matter of law." C.Cr.P. 775(3). We note at the outset that this latter provision is inapplicable to the instant situation—a judgment acquitting the defendant would not be appealable, and a conviction certainly would not be reversed on the basis of questions asked by defense counsel. Therefore, it is clear that the trial judge was not authorized to declare a mistrial on his own motion, and, as a result, the defendant's consent was necessary to the proper granting of the mistrial. The question raised, therefore, is whether this consent must be "the express consent of the defendant" of Article 591.

Although Article 775 provides that a mistrial may be granted and the jury dismissed when "(t)he defendant consents thereto," it does not further define consent. However, comment (e) to this article states that it must be considered in light of Article 591, in which "the *express consent of the defendant*" is required for the ordering of a mistrial (emphasis added). The record of the first trial reveals only that the defense pursued a line of questioning which the State found objectionable, and that, after a bench conference, the trial judge ordered a mistrial to which ruling the defense did not object. Clearly, the express consent required by Article 591 cannot be found in the record before the court.

*Id*. at 737 (footnote omitted).

In *Simpson*, the supreme court noted the result in *Lawson* was correct since the defense attorney brought the objectionable question (which led to the mistrial) to the attention of the trial judge and was not satisfied with an admonition by the trial judge. Additionally, as the party aggrieved by the objectionable question, the defense benefitted from the mistrial. The supreme court then explained why the reasoning in *Lawson* could not be applied to the case before it:

11

Nevertheless, the reasoning underpinning the *Lawson* decision cannot be applied to the case at hand. Comment (d) to Article 775 states that a defendant must object to an improper mistrial and reserve a bill of exceptions or be considered to have acquiesced in the court's ruling. In essence the comment is a statement that the provisions of Article 841 (as originally enacted) apply to a mistrial situation, and that the general legislative policy requiring contemporaneous objection to any irregularity and reservation of a bill of exceptions must be followed.

However, it is apparent that contemporaneous objection and reservation of a bill are not applicable to a plea of double jeopardy. As originally drafted, Article 841 did not require a bill to be reserved for "a ground for arrest of judgment under Article 859 . . .," one of which is double jeopardy. Moreover, it is clear that requiring a contemporaneous objection to an improperly granted mistrial does not advance the purpose of the rule, which is to put the trial judge on notice of the alleged irregularity and to provide him with the opportunity to correct the problem during trial. *State v. Dupre*, 339 So.2d 10 (La.1976); *State v. Charles*, 326 So.2d 335 (La. 1976). When a mistrial is declared, the jury is dismissed. (Compare the effect of granting a motion for acquittal, even when erroneously granted. *State v. Hurst*, 367 So.2d 1180 (La. 1979). Unless the defendant anticipates the declaration of a mistrial, the trial ends without the opportunity to object. See *United States v. Jorn*, [400 U.S. 470, 91 S.Ct. 547 (1971)]. Therefore, comment (d) is not a complete statement of the law; it must be considered with comment (e), and can apply only to mistrials granted for the defendant's benefit. *United States v. Jorn, supra*; Note, 32 La.L.Rev. 145 (1971).

In the instant case, the State was not clearly entitled to a mistrial. Although the prosecution may have believed its case prejudiced by the defense questions put to Ursin, its remedy was redirect examination to rehabilitate the witness and rebut the inferences arising from the cross-examination. Nevertheless, the trial judge granted a mistrial, for the prosecution's benefit, without obtaining the "express consent" of the defendant. By aborting the proceedings without the defendant's consent and without his interest in mind, the trial judge impermissibly deprived the defendant of his right to have his trial completed by the jury before which he had been placed in jeopardy. We

> therefore conclude that the trial judge was in error to deny the defendant's plea of double jeopardy.

*Id*. at 738-39 (footnote omitted).

In *State v. Albert*, 430 So.2d 1279 (La.App. 1 Cir.), *writ denied*, 433 So.2d 711 (La.1983), the court found Albert's silence to a trial judge's *sua sponte* mistrial was deemed as consent when the trial court asked defense counsel if he had any objections, and defense counsel replied that he had none. In *State v. DeGrate*, 25732 (La.App. 2 Cir. 3/30/94), 634 So.2d 965, *writ denied*, 94-1362 (La. 10/7/94), 644 So.2d 630, however, the second circuit found the defendant's silence did not constitute consent to a trial court's *sua sponte* mistrial when the mistrial did not benefit the defendant.

More recently, in *State v. Copelin*, 16-264 (La.App. 4 Cir. 12/7/16), 206 So.3d 990, *writ denied*, 17-47 (La. 9/29/17), 227 So.3d 286, the court found that the defendant failed to preserve his double-jeopardy claim involving the trial court's *sua sponte* mistrial when he neither objected to the mistrial nor invoked the automatic stay provided for in La.Code Crim. P. art. 775.1. That article provides:

> If a judge orders a mistrial, then upon motion of either the state or the defendant, the court shall order an automatic twenty-four-hour stay of all proceedings in which either the state or the defendant may take an emergency writ application to the appropriate reviewing courts with appellate jurisdiction, including the Supreme Court. The jury shall not be released pending the stay unless both the state and defendant agree to release the jury.

In this case, however, Holloway had already filed a motion to sever the offenses. The trial court denied Holloway's motion and proceeded with the first trial before ordering a mistrial on its own motion. Thus, it is reasonable to conclude that Holloway did not benefit from the mistrial as to all of the offenses. Rather, had the

13

trial court proceeded as to only the offenses properly charged by bill of information, Holloway would have received the benefit of at least a partial severance. Here, we find Holloway's lack of objection should not be considered acquiescence or consent to the mistrial. Therefore, without Holloway's consent to the mistrial and without a legal basis for granting the mistrial as to the offenses that could be tried by bill of information, the retrial of those offenses in the second trial violated the principle of double jeopardy. Thus, Holloway's motion to quash should have been granted as to the offenses of armed robbery, home invasion, and aggravated battery.

Although there was a legal defect in the first trial as to the charges of first degree rape and aggravated kidnapping, there was no legal defect in the first trial as to the charges of armed robbery, home invasion, and aggravated battery. We find that a partial mistrial could have been declared as to the charges of first degree rape and aggravated kidnapping, so that the first trial could have proceeded as to the charges of armed robbery, home invasion, and aggravated battery. Therefore, Holloway's convictions for armed robbery, home invasion, and aggravated battery are reversed.

V.

**CONCLUSION**

For the foregoing reasons, we affirm the trial court's convictions of first degree rape and aggravated kidnapping, and reverse the convictions of armed robbery, home invasion, and aggravated battery.

**AFFIRMED IN PART AND REVERSED IN PART.**