WICKER, J.
hln this criminal proceeding, defendant, Albert Morris, Jr., challenges the sufficiency of the evidence presented against him at trial for his misdemeanor conviction for false imprisonment in violation of La. R.S. 14:46. For the following reasons, we affirm defendant’s conviction. However, because we find an error patent requiring corrective action, we vacate defendant’s sentence and reinstate his original sentence imposed.
STATEMENT OF THE CASE
On November 7, 2014, the Jefferson Parish District Attorney filed a bill of information charging defendant, Albert Morris, Jr., with false imprisonment in violation of La. R.S. 14:46. The matter proceeded to a bench trial and on June 16, 2015, the trial judge, the Honorable Ellen Kovach, found defendant guilty as charged. On June 23, 2016, the trial judge sentenced defendant to imprisonment in the parish prison for six months. At the sentencing hearing, defense counsel orally moved for a new trial, challenging the sufficiency of the evidence presented at trial. On July 12, 2016, after sentencing, defendant filed a written motion for new trial. On November 7, 2016, defendant filed a motion to reopen sentencing, claiming that the trial judge was required under La. C.Cr.P. art. 853 to postpone sentencing to allow defendant time to file his motion for new trial. On November 7, 2016, the trial judge conducted a hearing on defendant’s motions, after which she denied defendant’s motion for new trial and resentenced defendant to six months imprisonment in parish prison. This timely writ application follows.
FACTUAL BACKGROUND
Lea Cottrell testified that she and defendant started dating in September 2013, and began living together in defendant’s residence shortly thereafter. In October 2013, defendant was arrested pursuant to a narcotics investigation and investigating officers interviewed Lea in connection with the alleged crime. Lea [ ^testified that, after defendant became aware of the extent of the information she provided to investigating officers in her statement, defendant became angry with her and the two fought often.
Lea explained that in September 2014, while she and defendant were fighting, defendant told her to “shut her mouth,” and she refused. Lea testified that defendant then grabbed her mouth and hit the back of her head on the floor. When she crawled to the bathroom, defendant grabbed her leg, dragged her across the bathroom tile floor and put her in a closet. Lea testified that defendant sat in front of the closet with the light off and would not allow her to get out of the closet. She testified that, at some point, defendant turned on the light and asked her if she wanted to leave him, to which she responded that she “fing hated” him and wanted to leave. Defendant then refused to allow Lea to leave. Lea testified that this incident lasted approximately five hours. Lea testified that defendant eventually let her out of the closet, and once he did so, the two had sex. She recounted that defendant said he wanted to have sex because he “figured” that it would be the last time they had sex; Lea perceived that statement to be a threat. Lea recalled a second incident involving defendant when, after she informed defendant that she wanted to leave him, defendant put her in the shower fully clothed, turned the shower on, and stood next to the shower so that she could not leave.
Lea testified that after those incidents occurred, she did not feel as if she was free to leave defendant’s home. She explained that at all times defendant was either physically with her or watching her *422 “on camera” at one of defendant’s businesses. Lea also explained that she spent time with “Debbie,” who lived in an apartment that defendant owned and who Lea referred to as her “babysitter.”
Lea testified that her mother moved away from the area and, after her mother left town, she was dependent on defendant and had no other source of Lineóme. She explained that she had nowhere else to live in New Orleans and no friends in New Orleans who were not also defendant’s friends.
Lea testified that, after the above-referenced incidents, she contacted “Keith,” the father of one of her children, and told him to come get her. She contended that Keith knew things had been “going bad” for a while, and he agreed to come and get her. When “Keith” was halfway between Alabama and Jefferson Parish, Lea called his phone and discovered that her mother, Diana Cottrell, was with Keith.
Lea explained that she arranged her escape with the help of two of defendant’s employees, “Chad” and “Alex.” She asked Chad and Alex to take defendant to get something to eat while she complained to defendant that she had a migraine headache and needed to rest at home. After defendant left, Lea packed a small backpack of clothes, left defendant’s house, crossed Jefferson Highway, and got into Keith’s vehicle that was waiting at a gas station across the street. She and Keith and her mother went to the police station to report defendant’s behavior.
Lea testified that she told Lieutenant Kevin Clouatre of the Jefferson Parish Sheriffs Office (JPSO) that defendant physically abused her approximately twenty times during their relationship and that she reported this abuse five or six times while receiving medical treatment for her injuries. Lea also testified that she suffers from epileptic seizures and that she has sustained injuries from her seizures.
Diana Cottrell, Lea’s mother, testified that in June or July of 2014, she became worried about her daughter. She noticed a lot of “red flags,” including the fact that Lea spent more time with defendant and less time with her children.[1] Diana testified that in September of 2014, Lea sent a Facebook message stating that she needed help to leave defendant. Diana explained that while Lea dated | ¿defendant, Lea could not simply leave on her own as she was either with defendant or defendant’s employees at all times and defendant had cameras at various places where he could pull up a “live feed” of the activity in his house or business.[2]
Diana testified that she contacted JPSO Lieutenant Donald Meunier, whom she knew from defendant’s October 2013 arrest, for his assistance. Diana testified that defendant is a former police officer and, thus, she did not trust calling 911 to get her daughter help because defendant had friends on the JPSO police force.
Diana testified that she traveled to Jefferson Parish with Keith and waited in his vehicle across the street from defendant’s residence. She stated that she saw defendant leave in his vehicle and, shortly thereafter saw Lea, who appeared “pretty frazzled” and “extremely scared,” running across Jefferson Highway. After Lea got into Keith’s vehicle, they all went to the sheriffs office to make a report.
*423 Diana testified that Lea has “grand mal” seizures where she falls to the ground and convulses, which sometimes cause injuries.
Lieutenant Meunier testified that he investigated defendant pursuant to an October 2013 narcotics investigation that resulted in defendant’s arrest and that he had not met defendant prior to that time. He further testified that during that investigation, Lea gave a statement in connection with that case and that defendant eventually pled guilty to those charges.
Lieutenant Meunier explained that on September 24, 2014, he received a call from Diana regarding her intention to return to Jefferson Parish from out-of-state to retrieve her daughter, Lea. He testified that Diana seemed “genuine” and “concerned” about her daughter’s safety. Lieutenant Meunier testified that he told Diana that her plan was ill-advised and he offered to put an undercover narcotics crew in the area in case any altercation arose. Lieutenant Meunier also set up a patrol unit in the vicinity of Jefferson Highway and waited. He explained that he 1 ¿observed Lea as she exited defendant’s residence and crossed Jefferson Highway. He testified that Lea moved across Jefferson Highway at a quick pace, looking around and turning her head, and her demeanor was “obviously frantic.”
Lieutenant Meunier testified that Lea subsequently reported the incident to him at the sheriffs office. He recalled that Lea’s disclosures to him about being held against her will were consistent with what he witnessed on Jefferson Highway: a frightened person making a hasty exit from defendant’s residence. Lieutenant Meunier turned the investigation at that point over to Lieutenant Clouatre in the personal violence unit.
Lieutenant Clouatre testified that he investigated the domestic violence and false imprisonment claims. He stated that Lea seemed “extremely fearful” for her safety and that her mother Diana seemed angry and also fearful for her daughter. Lieutenant Clouatre had no further involvement in the case after defendant’s arrest.
JPSO Detective Rhonda Goff testified that an individual named “Patrick Shaw” was arrested for shoplifting and had disclosed to an interviewing officer allegations surrounding a murder-for-hire plot involving defendant. Detective Goff explained that they brought Mr. Shaw to his apartment where he retrieved notes he and defendant exchanged while they were in the Jefferson Parish Correctional Center together. The record reflects that defendant owned the apartment where Mr. Shaw resided. Detective Goff testified that she read the notes, which appeared to be written in code, and that they corroborated the murder-for-hire plot to kill Lea’s mother, Diana.[3]
Defendant testified at trial that he owned several businesses, including a collision center, a sign business, and two real estate businesses. He further testified that he previously worked for the Jefferson Parish Sheriffs Office for thirteen years.
| (¡Defendant explained that he met Lea through her brother, Chris, who worked for defendant at a restaurant he previously owned. He eventually learned that Lea had epileptic seizures, which he witnessed. He observed Lea’ seizures, noting that she would fall and beat her head on the floor. Defendant testified that he and Lea never had any physical altercations and that any physical injuries Lea sustained were the *424 result of her seizures and were not from any physical altercation with him.
Defendant claimed that there came a time in their relationship when Lea spent all day and night with him, including going to work with him, but he testified that Lea wanted to be with him and that he was concerned Lea would have a seizure and needed someone nearby. He denied that her constant presence with him was at his insistence. Defendant admitted that in September 2014, he had surveillance cameras “all over” his properties.
Defendant insisted that he never had a physical altercation with Lea and denied her allegations that he physically abused her or locked her into a closet.[4]
Defendant introduced into evidence photographs of three closets in his home. As to the first closet, he testified that a person could not possibly fit into the closet. As to the second closet, defendant testified that the closet door opened from the inside and did not lock. As to the third closet, which was a walk-in closet, defendant testified that the closet was not in the location where Lea described the incident occurred.[5]
After considering the testimony and evidence presented over a two-day bench trial, the trial judge found defendant guilty as charged, stating:
Okay. And let me say this first of all. The three lay witnesses that testified in this case all left something to be desired. But that said, the testimony of the vie— And I’m — and I’m referring to including the 17testimony of the Defendant, which I found inconsistent and evasive. However, the one point that I — that I believed beyond all doubt or beyond any reasonable doubt was that Lea Cottrell was confined and prevented from leaving without her consent and against her will. And so, I am finding the Defendant guilty as charged.
DISCUSSION
In his sole assignment of error, defendant challenges the sufficiency of the evidence presented against him at trial for his false imprisonment conviction. For the following reasons, we find the evidence presented at trial sufficient to support defendant’s conviction.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. King, 06-554 (La.App. 5 Cir. 1/16/07), 951 So.2d 384, 390, writ denied, 07-0371 (La. 5/4/07), 956 So.2d 600. An appellate court’s primary function is not to redetermine the defendant’s guilt or innocence in accordance with its appreciation of the facts and credibility of the witnesses. Rather, our function is to review the evidence in the light most favorable to the prosecution and determine whether there is sufficient evidence to support the jury’s conclusion. State v. Bone, 12-34 (La.App. 5 Cir. 09/11/12), 107 So.3d 49, 58; State v. Banford, 94-883 (La.App. 5 Cir. 3/15/95), 653 So.2d 671. Evidence may be direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the *425 main fact can be inferred .according to reason and common experience. State v. Williams, 05-59 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La. 1/14/00), 753 So.2d 208.
Defendant was charged and convicted of false imprisonment. La. R.S. 14:46(A) defines the crime of false imprisonment as “the intentional confinement or detention of another, without his consent and without proper legal authority.” The victim, Lea, testified that in September 2014, while she and defendant argued, defendant grabbed her and threw her to the floor. She testified that when she began crawling away from defendant toward the bathroom, defendant grabbed her leg, dragged her across the bathroom tile floor and put her in a closet. Lea asserted that defendant then sat in front of the closet with the light off and would not allow her out of the closet for approximately five hours.[6] Lea testified that after that incident, she did not feel as if she was free to leave, and further explained that she was physically with defendant or at one of his businesses “on camera.”
Additionally, Lea’s mother, Diana, testified that Lea could not leave on her own as she was either with defendant or defendant’s employees all the time and that defendant had cameras at various places where he could pull up a “live feed” to view the home and business activity. Lieutenant Meunier testified that he was contacted by Diana and waited nearby as Lea made her escape from defendant’s home. He explained that he observed Lea “obviously frantic” and moving at a quick pace as she crossed Jefferson Highway to get into the vehicle with her mother. Lieutenant Meunier recalled that Lea’s subsequent disclosures to him about being held against her will were consistent with what he witnessed: a frightened person making a hasty exit from defendant’s residence.
On the other hand, defendant testified that he and Lea never had any physical altercations and he denied Lea’s allegations, asserting that it would be “impossible” for him to lock her or block her into any closet in his home.
li)After considering the testimony and the evidence, the trial judge found defendant guilty as charged, noting that the three lay witnesses that testified “all left something to be desired” and that defendant’s testimony was inconsistent and evasive. However, the trial judge believed “beyond any reasonable doubt” that Lea was confined, against her will and prevented from leaving defendant’s home without his consent.
The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. Bone, supra; State v. Rowan, 97-21(La. App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. Further, in the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding. State v. Benoit, 07-35 (La.App. 5 Cir. 5/29/07), 960 So.2d 279, 284. Viewing the evidence presented at trial in a light most favorable to the prosecution, we find that a rational factfin-der could find that defendant falsely imprisoned the victim, Lea, in violation of La. *426 R.S. 14:46. Accordingly, defendant’s assignment of error challenging the sufficiency of the evidence lacks merit and defendant’s conviction is hereby affirmed.
ERRORS PATENT
We have reviewed the record for errors patent, according to La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990).[7] Upon our review of this writ application and the official record in this case, the following error patent requires corrective action.
| inThe record reflects, on June 23, 2016, the trial judge sentenced defendant to imprisonment in the parish prison for six months. At the June 23, 2016 sentencing hearing, before sentence was imposed, defense counsel orally moved for a new trial. Defense counsel indicated his intent to file a written motion for new trial at a later date, but nonetheless stated that defendant was “ready for sentencing.” Defendant was sentenced that day. Thereafter, on July 12, 2016, he filed his written motion for new trial.
On November 7, 2016, defendant filed a motion to reopen sentencing, claiming that the trial judge erred in failing to postpone sentencing pursuant to La. C.Cr.P. art. 853.[8] The record reflects that, on November 7, 2016, the trial judge conducted a hearing on defendant’s motions, denied defendant’s motion for new trial, and resen-tenced defendant to parish prison for six months.
La. C.Cr.P. art. 853 mandates, in relevant part, that a “motion for a new trial must be filed and disposed of before sentence.” See also State v. Williams, 09-82 (La.App. 5 Cir. 12/29/09), 30 So.3d 975, 976. Further, La. C.Cr.P. art. 852 instructs that a motion for new trial “shall” be in writing. Therefore, defendant’s July 12, 2016 written motion for new trial was untimely because it was filed after defendant had been sentenced.[9] Thus, we find the *427 trial court erred in holding a Inhearing on defendant’s motion for new trial and in resentencing defendant after the denial of his untimely motion for new trial. Accordingly, we vacate defendant’s November 7, 2016 six-month sentence and reinstate defendant’s original June 23, 2016 six-month sentence.
CONVICTION AFFIRMED; SENTENCE VACATED; ORIGINAL SENTENCE REINSTATED

. The record indicates that Lea has four children, two of whom she had custody. However, the record reflects that, at some point after Lea began dating defendant, Lea’s two children moved out-of-state to live with Keith.

. Diana testified that for a period of time, she lived in the apartment complex with Lea and witnessed that defendant or someone else was with Lea at all times.

. Detective Goff testified that she later learned that Mr. Shaw overdosed and died at his apartment.

. Defendant acknowledged that he was six feet tall and weighed between 250 and 265 pounds and that he was significantly larger than Lea, who weighed 120 pounds.

. The photographs introduced into evidence at trial were not attached to defendant’s writ application and not provided to this Court.

. Lea also recounted another incident where defendant put her in the shower fully clothed and refused to let her leave.

. Generally, an error patent review is not conducted on misdemeanor convictions. Nevertheless, this Court has on occasion in the past conducted an error patent review for a misdemeanor conviction. See State v. Jones, 12-640 (La.App. 5 Cir. 10/30/13), 128 So.3d 436, 443; State v. Carruth, 94-147, 94-148 (La.App. 5 Cir. 9/27/94), 643 So.2d 1319, 1322.

. La. C.Cr.P. art. 853 provides:
A. Except as otherwise provided by this Article, a motion for a new trial must be filed and disposed of before sentence. The court, on motion of the defendant and for good cause shown, may postpone the imposition of sentence for a specified period in order to give the defendant additional time to prepare and file a motion for a new trial.
B. When the motion for a new trial is based on Article 851(B)(3) of this Code, the motion may be filed within one year after verdict or judgment of the trial court, although a sentence has been imposed or a motion for a new trial has been previously filed. However, if an appeal is pending, the court may hear the motion only on remand of the case.
C.When the motion for a new trial is based on Article 851(B)(6) of this Code, the motion may be filed within three years after the verdict or judgment of the trial court, although a sentence has been imposed or a motion for new trial has been previously filed. However, if an appeal is pending, the court may hear the motion only on remand of the case.

.Contrary to defendant's assertions, the trial judge was not "required” under La. C.Cr.P. art. 853 to postpone sentencing in this case. La. C.Cr.P. art. 853, in pertinent part, provides that, "[t]he court, on motion of the defendant and for good cause shown, may postpone the imposition of sentence for a specified period in order to give the defendant additional time to prepare and file a motion for a new trial.” First, this article is discretionary and not mandatory. Second, because the defense stated it was “ready” for sentencing, defendant waived any error concerning the timing of the imposition of sentence. Notwithstanding, in this writ application, the only *427 assignment of error raised challenges the sufficiency of the evidence presented at trial. Therefore, defendant does not seek review of the denial of his motion for new trial.