# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 21-25 consolidated with 21-26

**STATE OF LOUISIANA**

**VERSUS**

**JEFFERY LYNN COOLEY**

**********

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR-2017-816
HONORABLE MARTHA ANN O'NEAL, DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT
JUDGE**

**********

Court composed of Elizabeth A. Pickett, John E. Conery, and Candyce G. Perret, Judges.

**CONVICTIONS AFFIRMED.
SENTENCES AFFIRMED IN PART.
SENTENCES VACATED IN PART AND REMANDED FOR
RESENTENCING.
REMANDED WITH FURTHER INSTRUCTIONS.**

**S. Christie Smith, IV**
**SmithAdvocates, LLC**
**P.O. Box 1528**
**Leesville, LA 71496**
**(337) 239-2244**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    Jeffery Lynn Cooley

**James R. Lestage**
**District Attorney, Thirty-sixth Judicial District**
**Richard A. Morton**
**Assistant District Attorney**
**124 South Steward St.**
**DeRidder, LA 70634**
**(337) 463-5578**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**PICKETT, Judge.**

**FACTS**

The charges against the defendant, Jeffrey Lynn Cooley, arise from two incidents. On August 6, 2017, the defendant and a few other individuals allegedly lured Preston Maddox to the defendant's home and held him there against his will while beating him and robbing him as retaliation for his believed involvement in Elizabeth Ann Frazier's prior arrest for selling drugs. When law enforcement executed a warrant at the defendant's home two days later, they found numerous drugs inside the home, leading to the five charges related to controlled dangerous substances (CDS).

On October 6, 2017, the defendant was charged by bill of information, alongside Elizabeth Ann Frazier, with armed robbery of Preston Maddox, in violation of La.R.S. 14:64; second degree kidnapping of Preston Maddox, in violation of La.R.S. 14:44.1; and aggravated battery of Preston Maddox, in violation of La.R.S. 14:34. The three offenses are alleged to have occurred on August 6, 2017. On January 17, 2019, an amended bill of information was filed, maintaining the original three charges and adding five additional drug charges against only the defendant: possession with the intent to distribute CDS II (methamphetamine), in violation of La.R.S. 40:967; possession of CDS IV (temazepam), in violation of La.R.S. 40:969; possession of CDS IV (zolpidem tartrate), in violation of La.R.S. 40:969; possession of CDS IV (tramadol), in violation of La.R.S. 40:969; and possession of CDS II (morphine sulphate), in violation of La.R.S. 40:967. The CDS charges all have an offense date of August 8, 2017. On August 30, 2019, a second amended bill of information was filed, removing Elizabeth Ann Frazier as a codefendant but maintaining the eight charges against the defendant listed in the first amended bill of information.

On September 30, 2019, a jury unanimously found the defendant guilty as charged of aggravated battery and possession with intent to distribute CDS II (methamphetamine), and possession of CDS II (morphine sulphate). Additionally, the jury unanimously found the defendant guilty of the responsive verdicts of attempted possession of CDS IV (temazepam), attempted possession of CDS IV (zolpidem tartrate), and attempted possession of CDS IV (tramadol). The jury also found the defendant guilty of second degree kidnapping and armed robbery, but the verdict on those two counts was not unanimous.

On October 1, 2019, the state filed a "Habitual Offender Bill of Information," contending the defendant was a fourth felony offender, based on prior convictions on May 31, 1996; October 28, 2004; and February 3, 2012. On October 30, 2019, the defendant admitted to the accusations of the habitual offender bill. On November 19, 2019, the defendant was sentenced as a habitual offender to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence on all eight counts, with the life sentences to run concurrently to each other but consecutively to any other sentence the defendant might be serving.

Prior to the resentencing, the defendant filed a "Motion to Reconsider Sentence" on December 6, 2019, which argued the defendant's life sentences were "constitutionally excessive." That motion was denied without a hearing on December 13, 2019.

On September 28, 2020, the trial court, on its own motion, held a hearing to declare mistrials on the defendant's non-unanimous convictions for armed robbery and second degree kidnapping and to resentence the defendant on the remaining six convictions. This hearing was held in response to the Supreme Court's ruling in *Ramos v. Louisiana*, 59 U.S. ___, 140 S.Ct. 1390 (2020), which held all criminal

2

convictions of a serious offense must be the result of a unanimous jury. After declaring mistrials on the armed robbery and second degree kidnapping convictions, the trial court stated the "sentence technically remains unchanged[,] [b]ut for clarity of the record[,]" restated that the defendant was sentenced to life imprisonment at hard labor without benefit for the six other convictions. At the resentencing, the trial court noted the defendant had filed a motion in July, titled as a motion for new trial, which sought a declaration of mistrial in all eight convictions. After confirming the defendant was seeking a mistrial on all charges, the trial court noted that it had denied that motion "by granting the mistrial on counts one and count two." There does not appear to have been any motion to reconsider filed following the September 28, 2020 resentencing.

The defendant now seeks review of his convictions and sentences.

## ASSIGNMENTS OF ERROR

On appeal, the defendant asserts three assignments of error:

1. The trial court erred by allowing LCE 404(B) evidence of both prior convictions and un-convicted, pending charges, considering the length of the eight-count bill of information, the risk of confusion, and the unreasonable risk of prejudicial effect.

2. The trial court erred [in] failing to vacate all convictions and grant new trial[s] when, after *Ramos*, the non-unanimous verdicts were mistried.

3. The trial court erred by failing to separately determine if the habitual offender sentence was constitutionally appropriate, considering that the most serious charges were mistried and most of the remaining charges were lesser-included convictions.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there are two errors patent involving the sentences imposed. There is an issue involving the motion for new trial that merits discussion. Finally, we note the

3

defendant argues in brief that the trial court erred in failing to impose a non-enhanced sentence on each count before sentencing the defendant as a habitual offender. We will discuss this issue as a raised error.

We first address the issue involving the motion for new trial. As discussed, the defendant was convicted of eight counts and sentenced on all counts as a fourth habitual offender to a mandatory life sentence without benefits. After the defendant's motion for appeal was granted but before the appeal was lodged in this court, the United States Supreme Court held that convictions of serious offenses must be decided by a unanimous jury. *Ramos*, 140 S.Ct. 1390. Since two of the defendant's convictions, armed robbery and second degree kidnapping, were decided by a non-unanimous jury, the trial court issued an order on May 29, 2020, declaring a mistrial as to those two counts. Believing the remaining sentences to be illegal and in need of correction pursuant to La.Code Crim.P. art. 882, the trial court ordered resentencing as to the remaining counts.

On June 15, 2020, the defendant filed a motion in this court, requesting this court vacate all his sentences, claiming the vacating of two of the convictions may impact the "habitualization" of the remaining convictions. Moreover, the defendant questioned the validity of the unanimous convictions since the jury was erroneously instructed that a non-unanimous verdict would suffice. In an opposition, the state suggested this court had no jurisdiction to vacate any of the defendant's sentences as the appeal had not yet been lodged. On June 26, 2020, this court issued an order remanding the matter to the district court in light of *Ramos* and denying the defendant's request to vacate his sentences.

On June 24, 2020, the defendant filed a motion for new trial in the district court, requesting that a new trial be granted as to the counts for which he was convicted by a unanimous verdict. He contended that the trial included illegal jury

4

instructions regarding the number of jurors needed to reach a verdict and contended that the "multi-count charging ha[d] a cumulative effect on the jury that, when coupled with the erroneous jury instructions, pervasively cloud[ed] rights of the defendant." Before addressing the motion for new trial, the trial court re-sentenced the defendant on September 28, 2020. Recognizing that the sentences "technically remain[ed] unchanged," the trial court re-sentenced the defendant on counts three through eight to a mandatory life sentence on each count.

After the resentencing, the defendant asked the trial court if it was going to resolve the motion for new trial. The trial court stated that the motion could not be resolved until after sentencing. When the state asserted that it believed motions for new trial had to be resolved before sentencing, a discussion ensued, and the trial court stated its opinion that the defendant's motion was really a motion to dismiss rather than a motion for new trial. Defense counsel responded that the defendant's position was that the trial court should grant a new trial on all eight counts. The trial court stated that it denied the defendant's request by granting the mistrial on counts one and two only.

According to La.Code Crim.P. art. 853, a motion for new trial must be filed and disposed of prior to the imposition of sentence except under certain circumstances:

> A. Except as otherwise provided by this Article, a motion for a new trial must be filed and disposed of before sentence. The court, on motion of the defendant and for good cause shown, may postpone the imposition of sentence for a specified period in order to give the defendant additional time to prepare and file a motion for a new trial.
>
> B. When the motion for a new trial is based on Article 851(B)(3) of this Code, the motion may be filed within one year after verdict or judgment of the trial court, although a sentence has been imposed or a motion for a new trial has been previously filed. However, if an appeal is pending, the court may hear the motion only on remand of the case.

C. When the motion for a new trial is based on Article 851(B)(6) of this Code, the motion may be filed within three years after the verdict or judgment of the trial court, although a sentence has been imposed or a motion for new trial has been previously filed. However, if an appeal is pending, the court may hear the motion only on remand of the case.

The defendant was originally sentenced on November 19, 2019. Although the trial court believed that it needed to re-sentence the defendant on counts three through eight after it declared a mistrial on counts one and two, the trial court did not vacate the originally imposed sentences. Thus, at the time the defendant filed the motion for new trial at issue, sentences had been imposed and were still in effect. According to La.Code Crim.P. art. 853, a motion for new trial may be filed *after* the imposition of sentence only under certain circumstances. One of the circumstances, when a defendant is the victim of human trafficking, is obviously inapplicable. La.Code Crim.P. art. 851(B)(6). The other circumstance is provided for in La.Code Crim.P. art. 851(B)(3):

(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.

The United States Supreme Court's decision in *Ramos* is not "new and material evidence" that would have probably changed the jury's verdict as to counts three through eight. Moreover, even if the "new and material evidence" exception applied, the trial court was prohibited from entertaining a motion for new trial unless the case was remanded for that purpose. *State v. Brown*, 451 So.2d 1074 (La.1984) and La.Code Crim.P. art. 853. In this court's remand order, this court stated that the case was remanded to the district court "in light of" *Ramos*, and this court specifically denied the defendant's request that all sentences be vacated. Since only counts one and two were affected by the holding in *Ramos*,

6

this court's remand order did not authorize the trial court to take any action regarding the remaining counts, much less authorize the trial court to entertain a motion for new trial pertaining to those counts.

In *State v. Morris*, 16-712 (La.App. 5 Cir. 12/29/16), 209 So.3d 420, the fifth circuit discussed a similar error in its error patent review. The trial court originally sentenced Morris on June 23, 2016. *Id.* at 426. Before sentence was imposed, Morris orally moved for a new trial and indicated his intent to file a written motion for new trial at a later date. *Id.* Since Morris indicated he was ready for sentencing, the trial court sentenced him that day. *Id.* Thereafter, Morris filed a written motion for new trial. *Id.* On November 7, 2016, Morris filed a motion to reopen sentencing, asserting that the trial judge erred in failing to postpone sentencing to allow Morris to file his written motion for new trial. *Id.* After a hearing held that same date, the trial court denied the motion for new trial and re-sentenced Morris to the same sentence. In its error patent review on appeal, the fifth circuit found Morris' written motion for new trial was untimely since it was filed after Morris was sentenced. *Id.* Thus, the fifth circuit found the trial court erred in entertaining the motion for new trial and in resentencing Morris "after the denial of his untimely motion for new trial." *Id.* at 427. Accordingly, the fifth circuit vacated the sentence imposed at resentencing and reinstated the original sentence. *Id.*

Likewise, the motion for new trial filed in the present case was untimely since it was filed after the original sentence was imposed and neither of the exceptions set forth in La.Code Crim.P. art. 851 apply. Thus, the trial court was not required to rule on the motion before it re-sentenced the defendant. Accordingly, no error patent occurred with the trial court's failure to dispose of the motion for new trial prior to resentencing the defendant.

7

As for one of the errors involving the sentences imposed by the trial court, the trial court erroneously imposed the mandatory life sentencing provision on defendant's sentences as a fourth habitual offender on counts five, six, seven, and eight. In *State v. Lyles*, 19-203, p. 5 (La. 10/22/19), 286 So.3d 407, 410 (footnote omitted), the supreme court discussed the habitual offender sentencing provisions and the applicability of the 2017 and 2018 amendments to three different categories of defendants:

> We note at the outset, from the plain language of these provisions in conjunction with the effective dates of the acts, the legislature appears to have created three categories of persons potentially affected by these provisions:
>
> 1. There are persons—like the present defendant—whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed before that date. Those defendants would be eligible to receive the benefits of all ameliorative changes made by Act 282.
>
> 2. There are persons whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed between that date and August 1, 2018 (the effective date of Act 542). Those persons would be eligible to receive the benefit of the reduced cleansing period, and they may also have colorable claims to the other ameliorative changes provided in Act 282, although we need not decide that question today.
>
> 3. Finally, there are persons whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed on or after August 1, 2018. They would receive the reduced cleansing period by operation of Subsection K(2) added by Act 542 but their sentences would be calculated with references to the penalties in effect of the date of commission in accordance with Subsection K(2) added by Act 542.

The present defendant falls within the third category discussed in *Lyles* because his convictions are not yet final and his habitual offender bill was filed on January 1, 2019. Thus, according to *Lyles*, the defendant's sentences must be

calculated with reference to the penalties in effect on the date his offenses were committed, August 8, 2017. On that date, the sentencing provision for a fourth habitual offender was as follows:

A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:

. . . .

(4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:

(a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life; or

(b) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

La.R.S. 15:529.1(A)(4) (as of 8/8/17).[1]

At the defendant's original sentencing hearing and at his resentencing, the trial court referenced the mandatory life penalty provision set forth above, La.R.S. 15:529.1(A)(4)(b), before sentencing the defendant to life at hard labor on each count. At the original sentencing hearing, the trial court stated the following:

Given that Jeffery Lynn Cooley's prior convictions for distribution of LSD, and possession of marijuana with the intent to distribute, and possession of methamphetamine with the intent to distribute, each of

---

[1]The 2017 ameliorative changes to the habitual offender sentencing provisions became effective November 1, 2017. 2017 La. Acts 257 §1 and 282 §1.

which were offenses that upon conviction were punishable by imprisonment for ten years or more. And felony domestic abuse battery by strangulation and given your current convictions for crimes of violence and possession of methamphetamine with the intent to distribute under the provisions of the habitual offender law in effect on the date of his current offense on or about August 6th through 8, 2017 Revised Statute 15:529.1A (4) (b), states that the defendant shall be imprisoned for the remainder of his natural life without benefit of parole, probation or suspension of sentence on each of the eight crimes of conviction in the current case.

Therefore, the Court orders that Jeffery Lynn Cooley is [herein] sentenced to imprisonment at hard labor with the Louisiana Department of Corrections for the remainder of his natural life as per the applicable law on each of the felonies without benefit of parole, probation or suspension of sentence on each of the eight crimes . . . .

The trial court ordered the sentences to run concurrently with each other but consecutively to any other sentence.

The trial court correctly determined at the original sentencing hearing that the defendant's predicate offenses met the requirements for a mandatory life sentence under La.R.S. 15:529.1(A)(4)(b). All three of the predicate drug offenses were punishable by ten years or more. Two of the drug offenses, however, were entered on the same day in 1996.[2] Thus, they must be counted as one conviction since they were entered prior to October 19, 2004. La.R.S. 15:529.1(B). Nonetheless, the requirement that two or more of the predicate drug offenses be punishable by ten years or more was met by counting one of the 1996 convictions and counting the 2011 conviction for possession with the intent to distribute methamphetamine.

Additionally, at the original sentencing hearing, the trial court correctly determined that the defendant's current convictions for armed robbery and second degree kidnapping were crimes of violence; thus, they were punishable by the mandatory life provision of La.R.S. 15:529.1(A)(4)(b). As previously stated,

---

[2]Distribution of lysergic acid diethylamide and possession with the intent to distribute marijuana.

10

however, those convictions have been vacated since they were based on a non-unanimous jury verdict. Consequently, they must not be considered in determining whether the combination of predicate and current offenses met the requirements for a mandatory life sentence under section La.R.S. 15:529.1 (A)(4)(b).

Aware of its inability to consider these two counts, at resentencing, the trial court stated that the defendant's current offenses for counts three and four, aggravated battery and possession with the intent to distribute methamphetamine, also met the requirements of Section (A)(4)(b):

> [A]nd given his current conviction for Aggravated of [sic] Battery, a crime of violence, and Possession of Methamphetamine with the Intent to Distribute under the provisions of the Habitual Offender Law in affect [sic] on the date of the current offenses, on or about August 6th through 8th, 2017, Revised Statute 15:529.1A 4B, states that the defendant has be [sic] imprisoned for the remainder of this [sic] natural life without benefit of parole, probation or suspension of sentence on each of the six crimes of conviction in the current case.
>
> Therefore, the Court orders that Jeffery Lynn Cooley is herein sentenced to imprisonment at hard labor with the Louisiana Department of Corrections for the remainder of his natural life, as per the applicable law on each of the felonies. Namely, Aggravated Battery, Possession of Controlled Dangerous Substance Methamphetamine with Intent to Distribute, Attempted Possession of CDS Schedule IV, Attempted Possession of CDS Schedule IV, Attempted Possession of CDS Schedule IV, Triazolam; Attempted Possession of CDS Schedule IV, Tramadol; Attempted Possession of CDS Schedule IV, Zolpidem; Attempted Possession of CDS Schedule IV, Temazepam; Attempted Possession of CDS Schedule IV, Tramadol; Possession of Controlled Dangerous Substance, Morphine; of which all comprises a fourth offense felony for the habitual offender law. Being the same felonies, defendant was found guilty by a unanimous jury on September 30, 2019. These sentences shall run concurrently with each other but consecutive to any other.

Since aggravated battery is considered a crime of violence and possession with the intent to distribute methamphetamine is punishable by zero to ten years, the trial court correctly sentenced the defendant to the fourth habitual offender

11

mandatory life sentence for these two offenses (counts three and four).[3] For the remaining counts (counts five through eight), however, the mandatory life sentencing provision was not applicable. All of the offenses charged in counts five through eight were drug offenses punishable by less than ten years.[4] Thus, counts five through eight were punishable under La.R.S. 15:529.1(A)(4)(a) to at least twenty years and not more than the defendant's natural life. A life sentence is a legal sentence under La.R.S. 15:529.1(A)(4)(a). Unlike the mandatory life provision, however, life is not mandatory and parole eligibility is not restricted. La.R.S. 15:529.1(A)(4)(a). Accordingly, even though the defendant could have still received a life sentence for counts five through eight, a life sentence was not mandatory, and the life sentence would have been with the benefit of parole. Consequently, the sentences imposed on counts five through eight are vacated, and the case is remanded for resentencing on those counts.

Finally, the trial court failed to vacate the originally imposed sentences on counts three through eight before it re-sentenced the defendant on those counts.

---

[3] Aggravated battery is listed as a crime of violence in La.R.S. 14:2(B)(5). As for possession with the intent to distribute methamphetamine, the legislature amended the penalty provisions of La.R.S. 40:967 effective August 1, 2017. 2017 La. Act 281 §2. Thus, the new penalty provision was in effect when Defendant committed the offense on August 8, 2017. Under the amended provision, the penalty for possession with the intent to distribute methamphetamine depends on whether the aggregate weight of the methamphetamine was less than or more than twenty-eight grams. Although the bill of information does not specify the weight of the methamphetamine, Defendant faced a punishment of zero to ten years even if the weight was less than twenty-eight grams. La.R.S. 40:967(B)(1)(a). Thus, the trial court correctly determined the mandatory life penalty provision applied to Defendant's convictions as a fourth habitual offender for both aggravated battery and possession with the intent to distribute methamphetamine.

[4] Count five, attempted possession of temazepam; count six, attempted possession of zolpidem; and count seven, attempted possession of tramadol, were all punishable by imprisonment for up to two and one-half years. La.R.S. 40:969(C)(2) and La.R.S. 14:27(D)(3) or La.R.S. 40:979. Count eight, possession of morphine sulphate, was punishable by imprisonment for not more than two years. La.R.S. 40:967(C)(1). As it did with La.R.S. 40:967(B) (discussed in the previous footnote), the legislature amended La.R.S. 40:967(C) to make the penalty dependent on the weight of the substance. 2017 La. Acts 281, §2. The bill of information did not specify the weight of the morphine sulphate at issue in this case. Even under the greatest weight provision, the penalty was not more than five years. La.R.S. 40:967(C).

Since the mandatory life sentences imposed at both the original sentencing and the resentencing for counts five through eight were illegal, consideration of the trial court's failure to vacate the original sentences imposed on those counts is pretermitted. Upon remand for resentencing on those counts, the trial court is instructed to vacate the original sentences prior to resentencing. Since the mandatory life sentences imposed on counts three and four (aggravated battery and possession with intent to distribute methamphetamine), however, are not illegal, consideration of the error is not pretermitted as to those counts.

To begin, much of the jurisprudence discussing this issue involves a resentencing that occurs because a defendant has been adjudicated a habitual offender. The habitual offender statute specifically states the trial court must vacate the previous sentence, if one was imposed, before imposing a habitual offender sentence. La.R.S. 15:529.1(D)(3). The resentencing in the current case, however, occurred because the trial judge believed it was required as a result of the mistrial on counts one and two. Thus, this case does not fit squarely within the dictates of La.R.S. 15:529.1(D)(3). Cases have applied the requirement that an original sentence be vacated to cases in which the reason for resentencing was something other than habitual offender enhancement. *See State v. Brooks,* 14-1361 (La.App. 1 Cir. 4/24/15) (unpublished opinion);[5] *State v. Ellison*, 17-319 (La.App. 5 Cir. 12/13/17), 234 So.3d 217, *writ denied*, 18-53 (La. 10/29/18), 255 So.3d 568; *State v. Evans*, 09-477 (La.App. 5 Cir. 12/29/09), 30 So.3d 958, *writ denied*, 10-363 (La. 3/25/11), 61 So.3d 653; and *State v. Walton*, 98-1433 (La.App. 3 Cir. 3/24/99), 738 So.2d 36, *writ denied*, 99-1195 (La. 10/1/99), 748 So.2d 434.

The jurisprudence has dealt with the failure to vacate in various ways. In *State v. Jackson*, 00-717 (La. App. 1 Cir. 2/16/01), 814 So.2d 6, *writ denied*, 01-

---

[5]This case is cited at 2015 WL 1882776.

13

673 (La. 3/15/02), 811 So.2d 895, the first circuit discussed how the different circuits had analyzed the issue up until that time (2001). The court noted that both its circuit and the second circuit had found error when the trial court failed to vacate the original sentence but corrected the error on their own without the need for a remand. *Id.* at 9 (citing *State v. Smith*, 00-423 (La.App. 1 Cir. 11/3/00), 769 So.2d 1280, *writ denied*, 01-993 (La. 12/14/01), 804 So.2d 630; *State v. Hayes*, 97-1526 (La.App. 1 Cir. 5/15/98), 712 So.2d 1019, *writ granted on other grounds*, 98-1603 (La. 12/11/98), 729 So.2d 584; and *State v. Hunt*, 573 So.2d 585 (La.App. 2 Cir. 1991).

The third, fourth, and fifth circuits, however, had taken the approach of declaring the second sentence as "null and void" when the trial court failed to vacate the original sentence. *Jackson*, 814 So.2d at 9-10 (citing *State v. Dearmas*, 606 So.2d 567 (La.App. 5 Cir. 1992); *State v. Melbert*, 00-527 (La.App. 3 Cir. 11/2/00), 776 So.2d 499; and *State v. London*, 98-65 (La.App. 5 Cir. 5/27/98), 712 So.2d 287, *writ denied*, 98-1903 (La. 11/13/98), 730 So.2d 933. These courts reasoned that the original sentence was still in effect, necessitating the case be remanded for resentencing on the habitual offender adjudication. *Id.*

The court in *Jackson* stated, however, that the continuing validity of the "null and void" approach was called into question by the supreme court in *State v. Mayer*, 99-3124 (La. 3/31/00), 760 So.2d 309 (per curiam). *Jackson*, 814 So.2d at 10-11. In *Mayer* the supreme court appeared to depart from the idea that a second sentence was "null and void" if the trial court failed to vacate the original sentence. The supreme court stated the following:

> Granted in part; denied in part. The order of the court of appeal vacating the defendant's multiple offender sentence and remanding for resentencing is vacated, and the defendant's multiple offender sentence as imposed by the trial court is reinstated. To the extent that the October 30, 1998 commitment/minute entry reflects that the trial

14

judge vacated the defendant's original sentence and thereby eliminated any possible confusion as to the terms of the defendant's confinement, the failure of the transcript of the multiple offender hearing to show that the court did so before sentencing the defendant as a multiple offender did not affect the substantial rights of the defendant. La.C.Cr.P. art. 921; *see State ex rel. Haisch v. State*, 575 So.2d 816 (La.1991) ("The trial court is ordered to vacate the twenty-one year sentence it first imposed coincidentally with its imposition of the enhanced sentence. See La.R.S. 15:529.1(D)."). In all other respects the application is denied.

*Mayer*, 760 So.2d at 310.

In light of *Mayer*, the first circuit found there was no need to depart from its procedure of correcting the trial court's failure to vacate on its own, without remanding the case for resentencing:

> In the instant case, the same judge pronounced both the original sentence on the armed robbery conviction as well as the new sentence under the habitual offender statute. Before the court sentenced defendant as a habitual offender, the prosecutor called the court's attention to the earlier sentencing. The proceedings give no indication the court intended to impose the habitual offender sentence as an additional penalty. Thus, the court obviously intended for the life imprisonment imposed after the habitual offender adjudication to be the sentence in this case. The court simply overlooked its duty to vacate the original sentence. Correction of the trial court's failure to vacate the original sentence does not involve the exercise of sentencing discretion and will eliminate any possibility of confusion as to the terms of the confinement. Thus, we vacate the original forty-year sentence imposed on February 20, 1997, to conform to the requirements of La. R.S. 15:529.1. It is not necessary to vacate the habitual offender sentence imposed on September 11, 1997, or to remand for resentencing. *See* La.Code Crim. P. art. 882; *State v. Hunt*, 573 So.2d at 587. However, the case is remanded for the district court to amend the minute entry and commitment to reflect that the original sentence has been vacated.

*Jackson*, 814 So.2d at 11.

We agree with the first circuit. It is clear from the per curiam in *Mayer* that the supreme court was concerned with ensuring the clarity of the sentence in order to protect Mayer and was not in favor of labeling the habitual offender sentence as "null and void" simply because the trial court neglected to vacate the original sentence. The jurisprudence has consistently followed *Mayer* when the

15

commitment/minute entry reflects that the trial court vacated the original sentence even though the transcript does not. *State v. Cummings*, 10-891 (La.App. 5 Cir. 10/25/11), 79 So.3d 386, *writ denied*, 11-2607 (La. 4/9/12), 85 So.3d 693; *State v. Clements*, 12-1132 (La.App. 4 Cir. 3/13/13), 112 So.3d 306.

In the present case, neither the transcript, minute entry, nor commitment order state that the trial court vacated the original sentences. Thus, this case is distinguishable from *Mayer*. However, the trial court in the present case made clear during the sentencing hearing that it was resentencing the defendant. The trial court also signed an order stating that it was going to re-sentence the defendant, and the commitment order states the trial court re-sentenced the defendant. Furthermore, the trial court sentenced the defendant to the same sentence that it originally imposed – a mandatory life sentence. Considering these factors, this court considers the sentences imposed at the resentencing hearing to be the sentences in effect, not the sentences imposed at the original sentencing hearing. To make sure the record is clear, the trial court is instructed to vacate the original sentences on all the counts, including counts three and four.

In summary, the trial court erroneously imposed mandatory life sentences on counts five through eight. Accordingly, the sentences imposed on those counts are vacated, and the case is remanded for resentencing on those counts under La.R.S. 15:529.1(A)(4)(a). Additionally, because the trial court failed to vacate the original sentences before it resentenced the defendant, the trial court is instructed to vacate the sentences originally imposed on counts three through eight.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, the defendant contends the trial court erred by allowing evidence of prior convictions and pending charges in violation of

La.Code Evid. art. 404(B). Louisiana Code of Evidence article 404(B) relevantly states:

> **B. Other crimes, wrongs, or acts.** (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

The defendant contends that "[b]ecause the government chose to charge this defendant so aggressively—eight counts spanning many days of alleged activity, not all directly related to the same continuum of conduct—there is a particular duty to mitigate prejudice from other acts evidence." We disagree with the defendant's assessment of his charges. Three of his charges come from the alleged kidnapping and beating of Preston Maddox and the remaining five charges are CDS charges arising from the execution of a warrant at the defendant's home two days later. The warrant was based on the incident with Mr. Maddox. Additionally, the body of the defendant's actual argument for this assignment of error lacks any specificity as to what evidence he believes was inappropriately admitted. Accordingly, we are left to assess the introduction of "the defendant's previous convictions, as well as unrelated pending felony charges in Calcasieu Parish," as clarified by the defendant's fifteenth footnote. Furthermore, the defendant's argument appears to be based entirely on a claim that the admitted evidence was too prejudicial to be admitted. In his brief he states:

> The fact that the jury had such difficulty finding unanimously for the government "as charged" suggests that this case in which every bit of evidence counts, and the addition of both the unconvicted charges in Calcasieu Parish and the prior convictions can plainly be presumed to have affected the outcome of the jury's decision.

The defendant's only reference to the pretrial determination that the defendant's prior convictions and pending charges in Calcasieu Parish were admissible is a general reference to the hearing which begins on page 1509 of the record. However, that hearing did not include any argument on the admissibility of 404(B) evidence. The hearing held on May 6, 2019, included argument related to the possible admission of custodial statements made by the defendant to law enforcement. The attorneys stipulated that the officers involved with the other crimes evidence would testify in accordance with their previously submitted reports and that said evidence did in fact pertain to the defendant.

The defendant's fifteenth footnote discusses pending charges the defendant had in Calcasieu Parish which he contends should not have been introduced because they are "not part of the instant case." The defendant fled Beauregard Parish after the initial search of his residence which led to the five CDS-related charges in this case. The Calcasieu Parish charges arose out of the defendant's arrest for the violent crime charges against Mr. Maddox, as he was apprehended by a Calcasieu Parish K-9 officer and his dog after fleeing a residence.

The defendant's brief to this court lacks any valid record reference regarding the state's motion to introduce other crimes evidence, his opposition in the lower court, or the trial court's actual ruling and/or reasoning for said ruling. Accordingly, the defendant has failed to follow Uniform Rules—Courts of Appeal, Rule 2-12.4(A), and this assignment of error is considered abandoned.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, the defendant contends the trial court erred in granting a "partial mistrial" when it declared mistrials on the two counts where the defendant's convictions were non-unanimous but did not declare

18

mistrials on the six charges for which the defendant's convictions were unanimous. As previously discussed, the trial court declared mistrials on the defendant's non-unanimous armed robbery and second degree kidnapping convictions in light of *Ramos*. However, the trial court upheld the six remaining convictions and resentenced the defendant to life imprisonment on those six charges as a habitual offender.

In *State v. Busby*, 94-1354 (La.App. 3 Cir. 4/5/95), 653 So.2d 140, *writ denied*, 95-1157 (La. 9/29/95), 660 So.2d 854, this court affirmed two convictions for a defendant facing three charges of molestation of a juvenile when the state dismissed the third count after presenting evidence on the charge. Although the defendant argued his attorney was ineffective for not moving for a mistrial on the ground that all the evidence related to the third charge became "other crimes evidence" upon the dismissal of the charge during trial, this court held that because the remaining charges were supported by separate evidence, any error would have been harmless. The defendant contends this court should instead follow *State v. Higginbotham*, 46,975 (La.App. 2 Cir. 4/25/12), 122 So.3d 1, *on reh'g* (6/22/12), *writ denied*, 12-1718 (La. 5/24/13), 116 So.3d 658. The defendant contends that *Higginbotham* found that a partial mistrial could not be entered because the court vacated the defendant's convictions based upon the entry of a mistrial on one of the counts during trial. There is a major problem with the defendant's contention. The holding of *Higginbotham* that he relies upon was reversed on rehearing, with the second circuit actually following *Busby* and finding the mistrial on a count of public contract fraud did not invalidate the defendant's convictions for malfeasance in office and felony theft. *Higginbotham*, 122 So.3d at 23. Additionally, the mistrials in *Busby* and *Higginbotham* occurred during trial, whereas the mistrials in the instant case occurred after the defendant had been

convicted and sentenced. Accordingly, any evidence received regarding the armed robbery and second degree kidnapping charges did not constitute "other crimes evidence." This assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER THREE

In his final assignment of error, the defendant contends "[t]he trial court erred by failing to separately determine if the habitual offender sentence was constitutionally appropriate, considering that the most serious charges were mistried and most of the remaining charges were lesser-included convictions." We have ordered that the defendant's sentences for counts five through eight are vacated and have ordered they be remanded for resentencing. Accordingly, the defendant's contention that those sentences are excessive is moot.

With regard to the defendant's habitual offender life sentences on his convictions for aggravated battery and possession with the intent to distribute CDS II (methamphetamine), we previously noted the defendant's sentences are mandatory under La.R.S. 15:529.1(A)(4)(c). The defendant now contends the trial court did not "find that the life sentence was not constitutionally excessive." This assignment of error lacks merit.

Under La.Code Crim.P. art. 881.1(E):

Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

The defendant failed to object to his life sentences at either sentencing hearing. Furthermore, although a motion to reconsider was filed after the initial sentencing, it failed to state any grounds upon which the defendant's sentence should be reconsidered. Accordingly, the defendant would normally be restricted to a bare excessiveness review. However, under La.R.S. 15:529.1(A)(4)(c), the

20

only two sentences that remain for the defendant to contest are mandatory life sentences without parole. The only way the defendant's sentences could be considered excessive is if the defendant's unique circumstances warranted a downward departure. The supreme court has discussed the analysis for downward departure from minimum sentences:

> [I]n [*State v.*] *Johnson*, [97-1906 (La. 3/14/98), 709 So.2d 672], where we set out guidelines for when and under what circumstances courts should exercise their discretion under [*State v.*] *Dorthey*[, 623 So.2d 1276 (La.1993),] to declare excessive a minimum sentence mandated by the Habitual Offender Law. We held that "[a] court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut [the] presumption of constitutionality" and emphasized that "departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations." *State v. Johnson*, supra at 676, 677. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
>
>> [he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
>
> *Id.* (Citing *State v. Young*, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 529 (Plotkin, J., concurring)).

*State v. Lindsey*, 99-3256, 99-3302, pp. 4-5 (La. 10/17/00), 770 So.2d 339, 343, *cert. denied*, 532 U.S. 1010, 121 S.Ct. 1739 (2001).

In the instant case, the defendant has at no point claimed that he is exceptional, as he did not argue for a downward departure at either sentencing hearing or in his motion to reconsider. Furthermore, the defendant fails to argue that he is entitled to a downward departure in his appellate brief to this court, stating only that the trial court did not explicitly find that the life sentence was not excessive. As the defendant has up to this point never even contended that he deserves a downward departure from the mandatory life sentences he received as a

fourth felony offender for his aggravated battery and possession with the intent to distribute CDS II (methamphetamine) convictions, it is evident that he has failed to prove himself exceptional and entitled to a downward departure. Accordingly, there is no merit to the defendant's contention that his life sentences for aggravated battery and possession with the intent to distribute CDS II (methamphetamine) are constitutionally excessive.

## CONCLUSION

The defendant's convictions for aggravated battery, possession with intent to distribute CDS II (methamphetamine), possession of CDS II (morphine sulphate), attempted possession of CDS IV (temazepam), attempted possession of CDS IV (zolpidem tartrate), and attempted possession of CDS IV (tramadol) are affirmed. Additionally, the defendant's mandatory life sentences for aggravated battery and possession with intent to distribute CDS II (methamphetamine) are affirmed. The mandatory life sentences imposed on counts five through eight (convictions for attempted possession of CDS IV (temazepam), attempted possession of CDS IV (zolpidem tartrate), and attempted possession of CDS IV (tramadol), and possession of CDS II (morphine sulphate)) are vacated and the case remanded for resentencing on those counts under La.R.S. 15:529.1(A)(4)(a). Additionally, because the trial court failed to vacate the original sentences before it resentenced the defendant, the trial court is instructed to vacate the sentences originally imposed on counts three through eight for the record.

**CONVICTIONS AFFIRMED.**
**SENTENCES AFFIRMED IN PART.**
**SENTENCES VACATED IN PART AND REMANDED FOR RESENTENCING.**
**REMANDED WITH FURTHER INSTRUCTIONS.**